Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Bassil Madanat, Bar No. 285280
bassil@ruttenbergiplaw.com
RUTTENBERG IP LAW, A PROFESSIONAL
CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorney for Plaintiffs*
Jason Hullinger, Benjamin de Bont and
Agora Systems, LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON HULLINGER, an individual, <br><br> BENJAMIN DE BONT, an individual, <br><br> AGORA SYSTEMS, LLC, a California limited liability company, <br><br>          Plaintiffs, <br><br>     v. <br><br> KUNAL ANAND, an individual, <br><br> JULIEN BELLANGER, an individual, <br><br> PREVOTY, INC., a Delaware corporation, <br><br>          Defendants. | Case No. 15-cv-7185 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL FOR:** <br><br> 1. **JUDICIAL REINSTATEMENT OF AGORA** <br> 2. **WRONGFUL DISSOLUTION OF AGORA** <br> 3. **JUDICIAL ORDER TO EXPEL** <br> 4. **CORRECTION OF INVENTORSHIP** <br> 5. **BREACH OF FIDUCIARY DUTY** <br> 6. **DECLARATORY JUDGMENT OF OWNERSHIP OF INTELLECTUAL PROPERTY** <br> 7. **DECLARATORY JUDGMENT OF OWNERSHIP OF PREVOTY** <br> 8. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY** <br> 9. **FRAUD** <br> 10. **MISAPPROPRIATION OF TRADE SECRETS** <br> 11. **VIOLATION OF LANHAM ACT** <br> 12. **VIOLATION OF CA UNFAIR COMPETITION LAW § 17200** <br> 13. **CONVERSION** <br> 14. **TRESPASS TO CHATTELS** <br> 15. **CIVIL CONSPIRACY** <br><br> **JURY TRIAL DEMANDED** |

COMPLAINT

1

**COMPLAINT**

Plaintiffs Jason Hullinger, Benjamin de Bont and Agora Systems, LLC (collectively "Plaintiffs"), by and through their undersigned attorneys, complain as follows:

**NATURE OF ACTION**

1. This action arises from Defendant Kunal Anand's blatant breach of his fiduciary duties as a co-member, managing member and CEO of Agora Systems, LLC ("Agora") and subsequent misappropriation of intellectual property and other proprietary information and property rightfully owned by Agora, to the detriment of the company and its other co-founders, Jason Hullinger and Benjamin de Bont.

2. Despite what appeared to be a productive and trustworthy business relationship between Anand, Hullinger and de Bont, Anand ultimately defrauded the latter two members, unilaterally dissolved Agora, surreptitiously formed a competing business, Prevoty, Inc. ("Prevoty"), and misappropriated Agora's online security technology and source code for use in conjunction with Prevoty's business. Defendant Bellanger willingly and knowingly assisted Anand in these actions.

3. By this action, Plaintiffs seek, among other things, judicial reinstatement of the wrongfully dissolved Agora, a declaratory judgment reinstating Plaintiffs' title to their physical and intellectual property that was wrongfully converted by the defendants, injunctive relief halting the defendants' ongoing misappropriation and infringement of Plaintiffs' intellectual property rights, and damages for the numerous violations that the defendants have committed thus far.

**PARTIES**

4. Plaintiff Jason Hullinger ("Hullinger") is an individual residing in Los Angeles, California.

5. Plaintiff Benjamin de Bont ("de Bont") is an individual residing in Seattle, Washington.

6. Plaintiff Agora Systems, LLC ("Agora") was a limited liability company

1

organized under the laws of California.  Agora was wrongfully dissolved, and this action seeks (among other things) to reinstate the company.

7.    Defendant Kunal Anand ("Anand") is an individual residing in Calabasas, California.

8.    Defendant Julien Bellanger ("Bellanger") is an individual residing in Los Angeles, California.

9.    Defendant Prevoty, Inc. ("Prevoty") is a corporation organized and existing under the laws of Delaware, having its principal place of business in Los Angeles, California.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

11.    This Court has personal jurisdiction over Defendants because, among other things, Defendants are California citizens and residents of the State of California, and they live and work in this Judicial District.  Defendant Prevoty maintains a business location in the State of California, and transacts business by promoting, advertising and selling products and/or services in the State of California, including products and/or services that infringe Plaintiffs' intellectual property rights.

12.    Venue is proper under 28 U.S.C. §§ 1391 (b) and (c) because, among other things, all Defendants are residents of this Judicial District and the State of California.  In addition, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this Judicial District, and a substantial part of the property that is the subject of this action is situated in this Judicial District.  Defendants also operate at least one office location within this District, transact business within this District and promote, advertise and sell their infringing products and/or services in this District.

COMPLAINT

## FACTUAL BACKGROUND

### Hullinger, de Bont and Anand Are Co-Founders of Agora

13.    Hullinger, de Bont and Anand partnered to create a company whose purpose would be to develop an application security monitoring system for managing internet-based user-generated content.  Specifically, the technology would use a new method of parsing, tokenizing and data filtering (called content transformation) to prevent malicious users from attacking applications and networks in order to gain sensitive information from other users or the system's database.  In doing so, the technology would reduce the risks of various content injections, such as cross-site scripting (XSS) and structured query language (SQL) injections, by these malicious users.

14.    To formalize their relationship, Hullinger, de Bont and Anand agreed to form Agora as a California limited liability company.

15.    Hullinger, de Bont and Anand agreed that each of them would own an equal share of Agora.

16.    The three co-founders further agreed that each of them would hold an officer position within Agora.  Anand held the title of Chief Executive Officer (CEO), Hullinger held the title of Chief Technology Officer (CTO) and de Bont held the title of Chief Operating Officer (COO).

17.    Anand was tasked with filing paperwork with the California Secretary of State memorializing the co-founders' relationship and understandings.  Anand registered Agora with the California Secretary of State on or about February 22, 2012.  The Articles of Organization for Agora indicate that the limited liability company would be managed by all of its members.

18.    On March 30, 2012, Anand filed Agora's Statement of Information with the California Secretary of State, identifying himself as the sole managing member of Agora.

19.    On May 1, 2012, Anand sent Hullinger and de Bont an email

3

representing that the "LLC has been amended" to include both of them as co-founders (the "May 1, 2012 email"). In the May 1, 2012 email, Anand represented that the "revised Statement of Information document has been sent to the State of California." Addressing the members' respective ownership interests, Anand wrote: "Since there's an uneven percentage with there being 3 co-founders, it is set up as: Ben: 33.33%[,] Jason: 33.33%[,] Kunal: 33.34%."  Anand continued: "We can change these percentages without going through the state – we can rock/paper/scissors for the .01%."  A true and correct copy of the May 1, 2012 email is attached hereto as Exhibit A.

20.    Hullinger and de Bont reasonably and justifiably relied upon Anand's representations in the May 1, 2012 email, as well as other representations, promising that the California Secretary of State records would reflect the equal ownership and membership of each of Anand, Hullinger and de Bont.  Hullinger and de Bont believed that the California Secretary of State records were amended to reflect their ownership interests, as promised by Anand.

21.    Relying on Anand's representations, Hullinger and de Bont continued to collaborate with Anand as part of Agora.  Over the course of 2012, the three worked together to develop security software technology, including a product that they promoted under the name "Agora Blue."

22.    Through Agora, Hullinger, de Bont and Anand also worked together to reach out to prospective investors and potential customers, holding themselves out as co-founders of Agora, as well as a "cohesive and hard-working team," in pitch decks and presentations.

23.    In conjunction with developing security software technology including Agora Blue, the three (Hullinger, de Bont and Anand) also collaborated to develop source code for the technology ("Agora Blue Source Code").

24.    Hullinger, de Bont and Anand promoted Agora Blue as a product developed for and owned by Agora.  For example, Agora's Company Information

4

COMPLAINT

PowerPoint, which was intended for distribution to potential investors, stated: "Agora makes data safe through *revolutionary* security appliances and professional services . . . . [The] [f]irst product is Agora Blue – developed and tested over the last year[.]"

25.    While developing their flagship Agora Blue technology, Hullinger, de Bont and Anand also worked to establish the structure and operations of Agora. For example, the team registered the domain name agorasec.com, and each of the three co-founders was assigned an email account ending with @agorasec.com.

26.    The three co-founders also collaborated to create detailed financial projections outlining their working capital, disbursements, costs and staff needs. As reflected in these financial projections, each of the three co-founders was expected to draw an annual salary of $175,000.

27.    On or around May 21, 2012, Agora entered into an agreement with a customer, through which Agora was retained and compensated to perform an "Application Penetration Test to assess the level of security awareness evident in the design of [the customer's] web sites and API's to estimate the likelihood of application issue." Agora utilized the application security monitoring technology developed by Hullinger, de Bont and Anand to complete the Application Penetration Test by June 8, 2012.

28.    The three co-founders also agreed to open bank accounts for Agora. On or around June 8, 2012, Anand and Hullinger opened four bank accounts for Agora in Los Angeles, with each of them having signing authority over the accounts. When the accounts were created, de Bont was not in Los Angeles and therefore could not be added to the accounts. Per the May 1, 2012 email, it was anticipated that de Bont would be added as a signatory to the accounts at a later time.

29.    Throughout 2012, Anand repeatedly acknowledged to potential customers and investors that he, Hullinger and de Bont were co-founders of Agora. On or around July 19, 2012, a prospective investor noted that Hullinger, de Bont and

COMPLAINT

Anand were "an exceptionally talented team." On or around July 20, 2012, Anand wrote to his two co-founders (Hullinger and de Bont) noting that the prospective investor was "impressed with us as a team."

### Anand Introduces Bellanger

30.   In or around December 2012, Anand introduced Hullinger and de Bont to his friend, Defendant Bellanger. Anand told Hullinger and de Bont that Bellanger had strong industry connections and could be very helpful in securing investment funding for Agora. Based on these potential connections, Anand suggested that Bellanger join Agora.

31.   On or around January 12, 2013, Anand sent an email to Hullinger and de Bont, confirming that he "just gave Julien an Agora email (julien.bellanger)."

32.   By receiving an email account on the agorasec.com domain, Bellanger also received access to Agora's confidential and proprietary materials.

33.   On information and belief, Bellanger and Anand discussed various possible roles for Bellanger as part of Agora. On information and belief, it was contemplated that Bellanger might act as an advisor for Agora. At one point, it was proposed that Bellanger might assume the position of CEO at Agora. However, de Bont and Hullinger never agreed to give up any equity or ownership interest in Agora at any time.

34.   Although Bellanger's role at Agora was not finalized, he became privy to communications regarding pitches to customers, funding ideas and optimization of the Agora Blue technology, putting him in a special position of trust with respect to Agora and its members. To be sure, after Bellanger became involved with Agora, he worked with Hullinger, de Bont and Anand to pitch the company to various potential customers. Anand included Bellanger in Agora's strategic decisions and fundraising efforts.

35.   For example, on February 5, 2013, Anand sent Hullinger, de Bont and Bellanger a status report on Agora's progress with its demos for two potential social

6

networking customers.  In the status report, Anand indicated that Agora was getting "closer to a commercial agreement – something that's really going to be helpful for fundraising."

36.    By taking on a role with Agora, holding himself out as a part of the company's team, and accepting access to the company's proprietary and confidential materials, Bellanger also undertook fiduciary obligations to Agora and its members, including Hullinger and de Bont.

### Agora Planned to Seek Patent Protection

37.    As part of their innovation strategy, the Agora members decided to patent their proprietary technology, including the technology underlying Agora Blue.

38.    In late 2012 or early 2013, the co-founders searched for counsel who could help them secure patent protection.  Acting on behalf of Agora, Anand interviewed potential law firms, and forwarded along to Hullinger and de Bont at least one proposal from a major national law firm.

39.    Anand, Hullinger and de Bont recognized that they worked together on the technology underlying Agora Blue and, therefore, that each should be identified as an inventor on any prospective patent applications.

40.    Despite Bellanger's new involvement with Agora, the original co-founders reaffirmed that each of them should be listed as inventors on any patents relating to Agora Blue—to the exclusion of Bellanger, who had joined later and therefore did not contribute to conception of the technology.  Bellanger was of the same view.

41.    On or about February 5, 2013, Anand explicitly confirmed to Hullinger and de Bont that "[Bellanger] is not on the patents – he joined after the IP was developed . . . he already knows that . . . **the 'inventors' of the patent will be us three** . . . for [B]lue itself."  Anand further indicated that the team would file a provisional patent application for Agora Blue "immediately," and that things were

"all starting to come together."

## Anand's Unilateral Shutting-Down of Agora

42.   Anand and Bellanger conspired to misappropriate Agora's physical and intellectual property, re-start Agora under a new name (Prevoty, Inc.) offering substantially the same products and services as Agora, and shut out Hullinger and de Bont from the company.

43.   On or around February 18, 2013, Anand told Hullinger and de Bont that he would be unilaterally shutting down Agora's email and network, citing his parents' divorce as the primary factor.

44.   On or around February 18, 2013, Anand unilaterally cut-off Hullinger's and de Bont's access to their agorasec.com email accounts and cut-off their access to other documents stored on the agorasec.com network.

45.   As a result of Anand's actions, Hullinger and de Bont had no way of accessing much of Agora's materials.  They also could not communicate through their agorasec.com email accounts.

46.   On October 24, 2014, Anand unilaterally filed a Certificate of Cancellation for Agora with the California Secretary of State.  In the filing with the California Secretary of State, Anand purported to be the sole member of Agora.  In the same document, Anand further represented that the dissolution of Agora "was made by the vote of all of the members."

47.   Anand's statements on the Certificate of Cancellation were materially and willfully false.  Anand was not the sole member of Agora.  Indeed, his statement to this effect directly contradicts his agreement with Hullinger and de Bont that the three were equal members and co-founders of Agora.  Contrary to his statement, there was no "vote of all of the members" of Agora authorizing dissolution of the LLC.

48.   Anand's statements on the Certificate of Cancellation also suggest that, contrary to his promises and representations in the May 1, 2012 email, Anand did

8

COMPLAINT

not file papers with the California Secretary of State reflecting the true ownership percentages and membership status of Hullinger, de Bont and himself.

49.    Anand did not seek consent from either Hullinger or de Bont to file the Certificate of Cancellation.  Hullinger and de Bont did not consent to any dissolution of Agora, much less Anand's filing of the Certification of Cancellation.

50.    Anand also did not provide Hullinger or de Bont notice that he was filing the Certificate of Cancellation.

51.    Although purporting to shut down Agora, Anand failed to properly wind up the company.  For example, Anand did not distribute to Agora's members any of the company's remaining assets, including intellectual property, cash assets and other property belonging to Agora.

52.    Anand also embezzled the cash assets of Agora by withdrawing all cash from the Agora bank accounts, without making any distribution to the other members.  Over a period of months, Anand slowly deducted money from the Agora bank accounts.

53.    On or around June 6, 2015, Anand withdrew the remaining balances from Agora's four bank accounts.  A true and correct copy of Anand's last withdrawal confirmation from Agora's main account is attached hereto as Exhibit B.

54.    Anand did not notify Hullinger or de Bont that he was withdrawing funds from Agora's accounts.

55.    Anand also unilaterally closed Agora's bank accounts without notifying Hullinger or de Bont.

**Creation of Prevoty & Misappropriation of Agora's Intellectual Property**

56.    Bellanger and Anand made preparations to exclude Hullinger and de Bont even before Anand shut out his original co-founders from their email accounts and the company's share drive on February 18, 2013.

57.    Bellanger registered the domain name Prevoty.com on or around February 10, 2013.

COMPLAINT

58.    On or around March 6, 2013, Bellanger and/or Anand incorporated Prevoty, Inc. ("Prevoty") as a Delaware corporation.  Corporate documents for Prevoty identify Bellanger and Anand as executive officers and directors of the company.   Bellanger is identified as co-founder and CEO of Prevoty on the company's website, while Anand is identified as co-founder and CTO.

59.    Prevoty offers the same or substantially the same security services as Agora.

60.    For example, Prevoty offers security software for minimizing the risks of malicious cross-site scripting and SQL injections, which may compromise user or database information.

61.    According to Prevoty's website, www.prevoty.com, "Prevoty is a security software company dedicated to protecting users and enterprises by solving the difficult challenges related to application security."  Prevoty's website also states that the company "has developed an application security engine that monitors and protects your applications at runtime[,] . . . .  providing real-time visibility into what threats the applications are actually seeing and the option of transforming or blocking content and database queries so that everything the application processes is safe."

62.    On information and belief, Prevoty uses the same or substantially the same proprietary source code, or a derivation thereof, as the source code developed by Hullinger, de Bont and Anand at Agora.

63.    On March 15, 2013, Anand filed two patent applications with the United States Patent & Trademark Office (the "PTO"):   U.S. Patent Application No. 13/839,622 (the "'622 Application") entitled "Systems and Methods for Tokenizing User-Generated Content to Enable the Prevention of Attacks" and U.S. Patent Application No. 13/839,807 (the "'807 Application") entitled "Systems and Methods for Parsing User-Generated Content to Prevent Attacks."  Both applications list Anand as the sole inventor.

COMPLAINT

64.   On August 4, 2015, the '807 Application issued as U.S. Patent Number 9,098,722 (the "'722 Patent"), listing Anand as the sole inventor, with Prevoty as the assignee.

65.   The '622 Application is still pending before the United States Patent & Trademark Office.

66.   Not surprisingly, the systems and methods described in the '722 Patent and '622 Application mirror the technology developed by Hullinger, de Bont and Anand while they were building and promoting Agora, namely, the Agora Blue technology.

67.   The technology underlying Agora Blue is substantially equivalent to the claimed inventions recited in the '622 Application and '722 Patent, and is the same or substantially similar technology offered by Prevoty today.

68.   The '622 Application and the '722 Patent describe systems and methods to secure user generated content using tokenization and parsing.  Tokenization is a process by which user-generated content is tagged into defined categories for further security processing.  Parsing is the process of identifying and removing non-standard and malicious content.

69.   The claimed inventions recited in the '622 Application and '722 Patent were conceived of and developed by Hullinger, de Bont and Anand in their respective roles at Agora, as the company was attempting to productize new modes of application security monitoring.

70.   The claimed inventions of the '622 Application and '722 Patent belong to Agora.  By unilaterally assigning the '622 Application and the '807 Application to Prevoty, Anand and Prevoty have unlawfully taken possession of these applications, which rightfully belong to Agora.

71.   On information and belief, Anand and Bellanger secretly collaborated to develop Prevoty, a competing business, while still working with Hullinger and de Bont at Agora.

COMPLAINT

72.   On information and belief, Bellanger encouraged Anand to dissolve Agora, establish Prevoty and exclude Hullinger and de Bont from the new company in order to exploit the benefits of Hullinger and de Bont's efforts for themselves.

73.   On information and belief, Bellanger assisted Anand in incorporating Prevoty and procuring internet space for the new company.

74.   As a member and officer of Agora, Anand maintained a position of special trust in the company, and was under a fiduciary duty to assign to Agora any and all intellectual property that was conceived of and developed while at Agora and that related to Agora's business.

75.   Defendants' unlawful use of Agora's intellectual property and proprietary information has allowed Prevoty to divert a substantial amount of investor funding away from Agora by capitalizing on the substantial effort and goodwill Hullinger and de Bont contributed to Agora.  For example, following Anand's dissolution of Agora and patent assignments to Prevoty, Prevoty received approximately $700,000 on March 20, 2013, approximately $2,400,000 on December 17, 2014, and approximately $8,000,000 on March 8, 2015 from investment firms.

## FIRST CAUSE OF ACTION

### (Judicial Reinstatement of Agora)

76.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

77.   Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

78.   Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

79.   Anand's May 1, 2012 email to Hullinger and de Bont explicitly confirmed that Anand, Hullinger and de Bont would each hold a one-third ownership interest as co-founders and members of Agora.

COMPLAINT

80.    On October 24, 2014, Anand filed with the California Secretary of State a fraudulent Certificate of Cancellation purporting to dissolve Agora as a California LLC.

81.    Anand included materially false factual representations in the October 24, 2014 Certificate of Cancellation, including false representations that the dissolution was authorized by a vote of all of the members and that he was the "sole member" of Agora.

82.    Anand did not have authorization to unilaterally dissolve Agora as a California LLC, and his submission of the Certificate of Cancellation to the California Secretary of State on behalf of Agora was fraudulent.

83.    In approving the Certificate of Cancellation for Agora, the California Secretary of State relied upon the fraudulent information submitted in Anand's Certificate of Cancellation.

84.    Pursuant to California Government Code § 12261(a)(1) and/or 12261(a)(2), Plaintiffs request a judicial order for the reinstatement of Agora as a California limited liability company.

## SECOND CAUSE OF ACTION

### (Wrongful Dissolution of Agora, Against Defendant Anand)

85.    Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

86.    Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

87.    Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

88.    Anand's May 1, 2012 email to Hullinger and de Bont explicitly confirmed that Anand, Hullinger and de Bont would each hold a one-third ownership interest as co-founders and members of Agora.

89.    Anand wrongfully dissolved Agora when he filed the Certificate of

13

Cancellation with the Secretary of State on October 24, 2014, falsely listing himself as Agora's sole member.

90.    Pursuant to Cal. Corp. Code § 17704.07, Anand has wrongfully caused the dissolution of Agora and has lost the right to participate in management as a member and a manager of the LLC, thereby forfeiting any and all authority previously vested in him with respect to Agora.

## THIRD CAUSE OF ACTION

### (Judicial Order to Expel Defendants Anand and Bellanger from Agora)

91.    Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

92.    Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

93.    Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

94.    Anand's May 1, 2012 email to Hullinger and de Bont explicitly confirmed that Anand, Hullinger and de Bont would each hold a one-third ownership interest as co-founders and members of Agora.

95.    Anand began to include Bellanger in the company's strategic decisions in early 2013.

96.    Anand and Bellanger have engaged and continue to engage in wrongful conduct that has adversely and materially affected Agora's activities.

97.    Anand and Bellanger have engaged and continue to engage in conduct relating to Agora's activities that make it not reasonably practicable to carry on activities with Hullinger and/or de Bont as members of Agora.

98.    Anand should be expelled from Agora by judicial order, under Cal. Corp. Code § 17706.02(e).

99.    To the extent Bellanger is or was a member of Agora, Bellanger should be expelled from Agora by judicial order, under Cal. Corp. Code § 17706.02(e).

COMPLAINT

## FOURTH CAUSE OF ACTION

### (Correction of Inventorship, 35 U.S.C. § 256)

100.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

101.  Hullinger, de Bont and Anand jointly conceived of and/or contributed to inventions claimed in the '722 Patent and '622 Application.

102.  Hullinger, de Bont and Anand are co-inventors of the claimed subject matter in the '722 Patent and '622 Application.

103.  Hullinger and de Bont were omitted as named inventors on the '722 Patent and '622 Application without any fraud on their part.

104.  Inventorship on the '722 Patent and '622 Application should be corrected under 35 U.S.C. § 256 to reflect Hullinger and de Bont as named inventors.  Hullinger and de Bont are entitled to a judgment that both are inventors of the inventions claimed in the '722 Patent and '622 Application.

## FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty, Against Defendants Anand and Bellanger)

105.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

106.  Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

107.  Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

108.  Anand's May 1, 2012 email to Hullinger and de Bont explicitly confirmed that Anand, Hullinger and de Bont would each hold a one-third ownership interest as co-founders and members of Agora.

109.  Hullinger, de Bont and Anand collaborated to develop Agora and its software technology.  Each member of the team contributed substantially to Agora's development as a company, including optimization of Agora's technology, reaching

15

COMPLAINT

out to prospective investors and pitching Agora's technology to a number of potential customers.

110.  Agora was a member-managed LLC, and Anand was a managing member of Agora.

111.  Anand held the title of CEO of Agora.  Anand held himself out as CEO of Agora.

112.  As a member, managing member and CEO of Agora, Anand owed Plaintiffs fiduciary duties of loyalty and care.

113.  By virtue of these fiduciary duties, Anand was required to act in the utmost good faith towards Plaintiffs and to avoid acts and omissions adverse to Plaintiffs' business interests.

114.  Anand breached his fiduciary duties to Agora, Hullinger and de Bont by *inter alia* (a) starting a competing business, namely Prevoty; (b) unilaterally shutting down Agora's business operations; (c) shutting out Hullinger and de Bont from their Agora emails and other documents hosted on the agorasec.com network; (d) falsely claiming to be the sole member of Agora; (e) falsely claiming that the members of Agora had voted for dissolution; (f) unilaterally filing a Certificate of Cancellation for Agora; (g) promising to file paperwork with the California Secretary of State identifying Hullinger and de Bont as equal members and co-founders of Agora, and representing that he had done so, when Anand had never filed such papers and had no intention of doing so; (h) abandoning Agora's business efforts in the midst of on-going efforts to secure contracts with potential customers and inventors; (i) failing to assign intellectual property rights, including in the '722 Patent and '622 Application, to Agora; (j) failing to name Hullinger and de Bont as inventors on the '722 Patent and '622 Application; (k) assigning (or purporting to assign) Agora's intellectual property rights to Prevoty, despite obligations to assign the intellectual property rights to Agora; (l) misappropriating Agora's trade secrets and other property, such as the Agora Blue Source Code and other proprietary software related to Agora

16

COMPLAINT

Blue, for use by a competing company; (m) soliciting investment and customers for a competing company; (n) acting as CTO of a competing company; (o) failing to disclose the conduct described above, which created a conflict of interest for Anand; (p) conspiring with others to commit the wrongful conduct described above; (q) embezzling money from Agora, including unilaterally emptying the company's bank accounts and keeping the withdrawn cash for himself; (r) failing to wind up Agora and distribute remaining assets to the other members after unilaterally purporting to dissolve the company; and (s) other wrongful conduct.

115.  As a member, managing member and CEO of Agora, Anand had a fiduciary duty to apprise Hullinger and de Bont of any corporate opportunity before seizing it. Anand, however, kept Prevoty a secret from Hullinger and de Bont in order to reap the benefits of Agora to the exclusion of Plaintiffs.

116.  On information and belief, Anand knowingly and willfully performed all the aforementioned activities to financially benefit himself at Plaintiffs' expense.

117.  As a result of Anand's breach of his fiduciary duties, Plaintiffs have been irreparably injured and have suffered significant monetary damages in an amount to be proven at trial.

118.  By agreeing to be involved in Agora's strategic and investment decisions—and by accepting access to Agora's confidential and proprietary materials and information—Defendant Bellanger also undertook fiduciary duties to Agora and its members.

119.  Bellanger breached his fiduciary duties to Agora, Hullinger and de Bont by *inter alia* (a) starting a competing business, namely Prevoty; (b) misappropriating Agora's trade secrets and other property, such as the Agora Blue Source Code and other proprietary software related to Agora Blue, for use by a competing company; (c) soliciting investment and customers for a competing company; (d) acting as CEO of a competing company; (e) failing to disclose the conduct described above, which created a conflict of interest for Bellanger; (f) conspiring with Anand and others to

17

commit the wrongful conduct described above; and (g) other wrongful conduct.

120.  As a result of Bellanger's breach of his fiduciary duties, Plaintiffs have been irreparably injured and have suffered significant monetary damages in an amount to be proven at trial.

121.  Defendants have also acted with fraud, oppression and/or malice. Accordingly, Plaintiffs also seek an award of punitive and special damages.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment of Agora's Ownership of Intellectual Property, Against Anand and Prevoty)

122.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

123.  As a member, managing member and CEO of Agora, Anand had a fiduciary duty to assign any and all patents, copyrights and other intellectual property developed in connection with his work for Agora that relates to Agora's business.

124.  Hullinger, de Bont and Anand jointly conceived of and/or contributed to the inventions claimed in the '722 Patent and '622 Application.  Each had a duty to assign his interest in the patent and application to Agora.

125.  In violation of his fiduciary duties to Agora, Hullinger and de Bont, Anand purported to assign his entire interest in the '722 Patent and '622 Application to Prevoty, a competitor of Agora.

126.  Anand's purported assignments of his interest in the '722 Patent and '622 Application to Prevoty are void because (1) Anand was only one of three co-inventors of the claimed inventions, and (2) Anand was under a fiduciary obligation to assign his intellectual property rights to Agora.

127.  Agora is the rightful owner of all rights and interest in the '722 Patent and '622 Application, as well as any U.S. or foreign applications or issued patents claiming priority therefrom or relating thereto.  To the extent necessary, Anand

and/or Prevoty should be enjoined to assign all such rights and title to Agora.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgment of Agora's Ownership of Prevoty, Against Anand, Bellanger and Prevoty)

128.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

129.  As a member, managing member and CEO of Agora, Anand had a fiduciary duty to refrain from competing with Agora and to refrain from seizing for himself opportunities that rightfully belong to the company.  Anand further had a fiduciary duty to account to Agora and its members for any property, profit or benefit derived by Anand in the conduct of the LLC's business, or through use of the LLC's property or information, including through the appropriation of any LLC opportunities.

130.  By agreeing to be involved in Agora's strategic and investment decisions—and by accepting access to Agora's confidential and proprietary materials and information—Defendant Bellanger also undertook these fiduciary duties to Agora and its members.

131.  In violation of these fiduciary duties, Anand and Bellanger conspired to create a new company (Prevoty) that competes directly with Agora, shut down Agora's business operations and shut out Hullinger and de Bont from Agora's business operations, converted Agora's physical property and misappropriated Agora's trade secrets, confidential information and other intellectual property for the benefit of the new company, and appropriated customer and investment opportunities—all at the expense of Agora and its other members.

132.  Agora is entitled to an accounting and recovery of all property, profit or benefit derived through use of Agora's property or information, including through the appropriation of any LLC opportunities, including without limitation (a) all stock of Prevoty, (b) all salaries, bonuses, profits and other benefits received by

Defendants Prevoty, Anand and/or Bellanger, (c) all moneys and other consideration received as investments by Defendants Prevoty, Anand and/or Bellanger, and (d) any other property, profit or benefit derived through the conduct of a business that competes with Agora, or through use of Agora's property or information, or through the appropriation of any of Agora's opportunities.

## EIGHTH CAUSE OF ACTION

**(Aiding and Abetting Breach of a Fiduciary Duty, Against Anand, Bellanger and Prevoty)**

133.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

134.  Bellanger and Anand each assisted the other in breaching his fiduciary duties owed to Plaintiffs.

135.  Bellanger was aware of Anand's role as a member, managing member and CEO of Agora.  Accordingly, Bellanger was on notice as to Anand's fiduciary duties owed to Agora and its members.

136.  Anand was also aware of Bellanger's role with Agora, as Anand had introduced Bellanger and provided him with access to Agora's confidential and proprietary materials.  Accordingly, Anand was also on notice as to Bellanger's fiduciary duties owed to Agora and its members.

137.  Bellanger took concrete steps to facilitate Anand's breach of his fudiciary duties.  Among other things, Bellanger registered the domain name Prevoty.com, assisted Anand in setting up a competing company, agreed to act as CEO of the new company, consented to Anand's role as CTO of the new competing company, and aided and facilitated Anand's misappropriation and conversion of property and opportunities belonging to Agora.  Bellanger also serves as Prevoty's Agent for Service of Process in California.

138.  On information and belief, Bellanger encouraged Anand to shut out Hullinger and de Bont from Agora and to form Prevoty without them.

20

COMPLAINT

139.  On information and belief, Bellanger and Anand secretly collaborated to develop and establish Prevoty while working at Agora, while withholding such information from Hullinger and de Bont.

140.  Anand also took concrete steps to facilitate Bellanger's breach of his fiduciary duties.  Among other things, Anand facilitated Bellanger's access to confidential and proprietary materials at Agora, assisted Bellanger in incorporating a competing business, agreed to act as CTO of the new company, consented to Bellanger's role as CEO of the new competing company, and aided and facilitated the misappropriation and conversion of property and opportunities belonging to Agora.

141.  On information and belief, Anand and Bellanger willingly performed the above actions having knowledge of the other's fiduciary duties to Plaintiffs.

142.  As a result of Anand and Bellanger's aiding and abetting of the other's breach of fiduciary duties owed to Plaintiffs, Plaintiffs have suffered and continue to suffer significant damage in an amount to be proven at trial.

143.  Defendants have also acted with fraud, oppression and/or malice. Accordingly, Plaintiffs also seek an award of punitive and special damages.

## NINTH CAUSE OF ACTION

### (Fraud, Against Anand)

144.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

145.  Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

146.  Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

147.  On March 30, 2012, Anand filed Agora's Statement of Information with the California Secretary of State, identifying himself as the sole managing member of Agora.

21

COMPLAINT

148. On May 1, 2012, Anand sent Hullinger and de Bont an email representing that the "LLC has been amended" to include both of them as co-founders. In the May 1, 2012 email, Anand represented that the "revised Statement of Information document has been sent to the State of California."

149. On October 24, 2014, Anand unilaterally filed a Certificate of Cancellation for Agora with the California Secretary of State. In the filing with the California Secretary of State, Anand purported to be the sole member of Agora. In the same document, Anand further represented that dissolution of Agora "was made by the vote of all of the members."

150. Based upon Anand's statements in the Certificate of Cancellation, it appears likely that Anand's statements in his May 1, 2012 email were false, and that Anand never sent any revised Statement of Information to the California Secretary of State. Plaintiffs, however, did not discover the falsity of these statements until recently.

151. Moreover, by virtue of his fiduciary relationship with Plaintiffs, Anand had a duty to inform Plaintiffs if he was creating any competing business.

152. Anand failed to disclose material information to Hullinger and de Bont regarding his plans to form Prevoty, a competing company.

153. On information and belief, all such representations regarding Agora's LLC documents were false at the time they were made and were known to be false by Anand at such times.

154. On information and belief, all such omissions regarding Agora's LLC documents were material at the time they were omitted and were known to be material by Anand at such times.

155. On information and belief, Anand's fraudulent representations and omissions were made with the intent to defraud Hullinger and de Bont and to induce Hullinger and de Bont to continue developing Agora and its software technology so that he may benefit from Hullinger and de Bont's efforts and contributions.

156.  Hullinger and de Bont justifiably relied on the material information, or lack thereof, provided by Anand.  Hullinger and de Bont had no reason to believe that Anand failed to add them as legal members of Agora or that Anand was secretly developing and establishing a competing company while actively promoting Agora's business and technology.

157.  Hullinger and de Bont have suffered significant and irreparable damages as a result of Anand's fraudulent misrepresentations and omissions and request compensatory and punitive damages in an amount to be proven at trial.

158.  Anand's statements in the Certificate of Cancellation are false.  Even if Anand never revised the Statement of Information, Hullinger and de Bont were legally members and owners of Agora.  Anand was not the "sole member" of the LLC, nor had the members taken a vote to dissolve the LLC.

159.  To the detriment of Plaintiffs, the Secretary of State reasonably relied on Anand's false statements in dissolving Agora.

160.  Plaintiffs seek damages in an amount to be proven at trial.

161.  Defendants have also acted with fraud, oppression and/or malice.  Accordingly, Plaintiffs also seek an award of punitive and special damages.

162.  Plaintiffs have also suffered significant and irreparable damages as a result of Anand's fraudulent representations to the Secretary of State.

## TENTH CAUSE OF ACTION

**(Misappropriation of Trade Secrets, Against Anand, Bellanger and Prevoty)**

163.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

164.  Plaintiffs' confidential information, including the Agora Blue Source Code, relating to Agora's unique underlying software technology derives independent economic value from not being widely known to the public, and Plaintiffs used reasonable means to maintain its secrecy.

165.  On information and belief, Anand, Bellanger and Prevoty knew or had

reason to know that Agora's proprietary information, including the Agora Blue Source Code, was protected as a trade secret.

166. Anand and Bellanger, as fiduciaries to Agora, were under a duty to maintain the secrecy of Agora's trade secrets and confidential information.

167. On information and belief, Defendants improperly appropriated Plaintiffs' confidential and proprietary information and trade secrets, through misrepresentations and other improper means, and used such information without Plaintiffs' express or implied consent, despite having knowledge or reason to know that said acquisition and use was in breach of Anand's and Bellanger's duty to maintain the information's secrecy and value.

168. Defendants' misappropriation of Agora's trade secrets violates § 3426.1 of the California Civil Code, *i.e.* the Uniform Trade Secrets Act (UTSA).

169. As a result of Defendants' unlawful misappropriation and use of Agora's confidential and proprietary information and trade secrets, Plaintiffs have suffered significant harm, entitling them to an injunction under § 3426.2(a) of the UTSA to prevent Defendants' use of such information and materials, damages and attorneys fees under §§ 3426.3(a) and 3426.4 of the UTSA, and exemplary damages under § 3426.3(c), for Defendants' willful and malicious misappropriation of Plaintiffs trade secrets.

## ELEVENTH CAUSE OF ACTION

### Violation of Lanham Act, Section 43(a)

### (Unfair Competition under 15 U.S.C. § 1125(a), Against Anand, Bellanger and Prevoty)

170. Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

171. In light of the proprietary technology that was conceived of and developed by Agora's members to further Agora's business, Defendants' scheming tactics to wrongfully shut down Agora, usurp intellectual property owned by Agora

24

and market such intellectual property as their own, to the exclusion of Agora and its other members, constitutes unlawful, unfair, and/or deceptive business practices in violation of 15 U.S.C. § 1125(a).

172.  Defendants' unauthorized and infringing use and promotion of the Agora Blue technology under the Prevoty name, after wrongfully forcing Agora to terminate, misrepresents the nature, qualities and/or geographic origin of Agora's and Prevoty's goods and services.

173.  Defendants knew or should have known that its unauthorized and infringing use and promotion of the Agora Blue technology under the Prevoty name misrepresents the nature, qualities and geographic origin of Agora's and Prevoty's goods and services.

174.  Defendants' unauthorized and infringing use and promotion of the Agora Blue technology under the Prevoty name, after wrongfully forcing Agora to terminate and stop competing, severely hinders fair competition.

175.  As an actual and proximate result of Defendants' willful and unfair, unlawful, and/or deceptive business practices, Plaintiffs have suffered and continue to suffer irreparable harm and damage to their business, reputation and goodwill.

176.  Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of any Prevoty products or services using the Agora Blue Source Code and/or underlying technology, as well as recovery of the costs of this action. Furthermore, Plaintiffs are informed and believe, and on that basis allege, that Defendants' conduct was undertaken willfully and with the intention to misrepresent the products and/or services at issue, making this an exceptional case entitling Plaintiffs to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

COMPLAINT

## TWELFTH CAUSE OF ACTION

### (Violation of California Unfair Competition Law, CA Bus. & Prof. Code § 17200)

### (Against Anand, Bellanger and Prevoty)

177.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

178.  At the time that Prevoty was created, Agora and Prevoty were direct competitors in the application security monitoring industry.

179.  Defendants have engaged in unfair and/or unlawful business practices within the meaning of California's Business and Professions Code § 17200 because, in California and throughout the country, and through various channels of interstate commerce, Defendants have engaged in misappropriation of intellectual property and unfair competitive practices, which violate 15 U.S.C. § 1125(a), among other violations.

180.  Defendants' unauthorized and infringing use and promotion of the Agora Blue technology under the Prevoty name, after wrongfully forcing Agora to terminate, has damaged and continues to damage fair competition within the application security monitoring industry, including in California.

181.  Defendants' conduct has been anticompetitive, as well as immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

182.  Defendants' conduct is not beneficial, but in any event, the harm caused by Defendants' conduct outweighs any benefits.

183.  Pursuant to California's Business and Professions Code §§ 17203 & 17206, Plaintiffs are entitled to injunctive relief, restitution and disgorgement of Defendants' profits obtained through its unfair competitive practices, to the maximum extent permitted by law.

184.  Unless enjoined, Defendants will continue to unfairly compete with Plaintiffs in California, causing harm to the relevant consumers.

26

COMPLAINT

## THIRTEENTH CAUSE OF ACTION

### (Conversion, Against Anand, Bellanger and Prevoty)

185.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

186.  Plaintiffs owned, possessed and/or were entitled to immediate possession of personal property, intellectual property, and other assets, which were converted by Defendants.  The converted property includes, among other things, confidential methods, source code, programming, software, documents, emails and other papers, patents and cash held in various bank accounts.

187.  Defendants substantially interfered with Plaintiffs' possession and control of their property.

188.  Among other things, Defendants substantially interfered with Plaintiffs' possession and control of their property by taking and using Agora's property and other papers when developing and promoting Prevoty's business and technology.

189.  Moreover, the methods, source code, programming and software pertaining to Agora's technology all constitute intellectual and physical property created for and rightfully belonging to Plaintiffs.  As such, Plaintiffs are entitled to exercise control and ownership over such property.

190.  Further, as alleged above, Anand filed with the PTO two patent applications in his own name – the '622 and '807 Applications – describing methods to secure user-generated content through tokenization and parsing.  He subsequently assigned these patent applications to Prevoty on December 16, 2014—assignments that Prevoty accepted. The technology in Anand's patent applications constituted the same underlying technology offered by Agora in the Agora Blue product, and is rightfully owned by Agora.

191.  Defendants Anand, Bellanger and Prevoty have intentionally and substantially interfered with Agora's property rights by patenting, taking possession of and transferring such intellectual property to Prevoty without Plaintiffs' consent.

27

192.  As a result of Defendants' unlawful conversion, Plaintiffs have suffered significant damages and lost profits in an amount to be proven at trial.

193.  Plaintiffs are also entitled to preliminary and permanent injunctive relief ordering the return of their property.

194.  Defendants have also acted with fraud, oppression and/or malice. Accordingly, Plaintiffs also seek an award of punitive and special damages.

## FOURTEENTH CAUSE OF ACTION

### (Trespass to Chattels, Against Anand)

195.  Plaintiffs restate and incorporate by reference their previous allegations, as if fully set forth herein.

196.  As members and officers of Agora, Hullinger and de Bont were in rightful possession of their Agora email accounts and documents on Agora's shared hard drive.

197.  Anand intentionally and substantially interfered with Hullinger and de Bont's access to their Agora email accounts and to Agora's shared drive when he unilaterally shut down Agora's network.

198.  Hullinger and de Bont's email accounts contained valuable information related to their contributions to Agora's proprietary technology and business development strategies.

199.  Anand's interference has permanently deprived Hullinger and de Bont of access to their Agora email accounts and shared drive, preventing them from obtaining documents and materials, which they have a right to possess.

200.  In so doing, Anand intentionally and substantially interfered with Hullinger and de Bont's property rights without their consent.

201.  As a proximate result of Anand's unlawful conduct, Hullinger and de Bont have suffered significant damages in an amount to be proven at trial.

202.  Defendants have also acted with fraud, oppression and/or malice. Accordingly, Plaintiffs also seek an award of punitive and special damages.

28

COMPLAINT

## **FIFTEENTH CAUSE OF ACTION**

### **(Civil Conspiracy, Against Anand, Bellanger and Prevoty)**

203.  Plaintiffs restate and incorporate by reference their previous allegations, as if fully set forth herein.

204.  Defendants have conspired to implement the wrongful conduct alleged above.

205.  On information and belief, Anand and Bellanger surreptitiously agreed—either orally, in writing and/or implicitly through their actions—to undertake the wrongful conduct described above, including shutting down Agora's operations, shutting out Hullinger and de Bont from their emails and the Agora network, forming a new competing company (Prevoty), dissolving Agora, misappropriating and converting Agora's property, assigning Agora's intellectual property rights to Prevoty, and failing to disclose such conduct to Plaintiffs.  In doing so, Anand and Bellanger acted both in their personal capacity and in their respective roles with Prevoty.

206.  Each of the Defendants was aware of the wrongful conduct and intended that it should occur.

207.  Accordingly, each of the Defendants is responsible and liable for the harm caused by the other co-conspirators alleged above.

208.  Defendants have also acted with fraud, oppression and/or malice. Accordingly, Plaintiffs also seek an award of punitive and special damages.

## **ADDITIONAL CAUSES OF ACTION RESERVED**

209.  Plaintiffs restate and incorporate by reference their previous allegations, as if fully set forth herein.

210.  Once Agora is reinstituted as an LLC and the '722 Patent is properly assigned to Agora, Plaintiffs are likely to amend their Complaint to add a claim for patent infringement.

211.  Plaintiffs are investigating whether Defendants have also infringed

29

COMPLAINT

Plaintiffs' copyright in various source code and other writings belonging to Plaintiffs. Plaintiffs are likely to amend their Complaint to add claims for copyright infringement after discovery on such issues.

212. Plaintiffs also intend to seek discovery to ascertain the names of other individuals and/or entities that conspired with Defendants and/or aided Defendants in committing the wrongs alleged above. Plaintiffs intend to amend their Complaint to add claims against these individuals and/or entities.

213. Plaintiffs also reserve the right to otherwise amend their Complaint and/or add parties, to the extent permitted by the Court's scheduling order and by the Federal Rules of Civil Procedure.

## **DEMAND FOR JURY TRIAL**

214. Plaintiffs hereby demand a jury trial on all claims, damages and any other issues presented herein that are triable to a jury.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray that the Court enter judgment against Defendants Anand, Bellanger and Prevoty and in favor of Plaintiffs as follows:

A. Declare that Anand wrongfully caused the dissolution of Agora under Cal. Corp. Code § 17704.07;

B. Order the California Secretary of State to reinstate Agora as an active limited liability company, under California Government Code § 12261(a)(1) and/or 12261(a)(2). To the extent that Agora is not reinstated, Plaintiffs Hullinger and de Bont raise their claims asserted herein as former owners of Agora, and seek their pro rata share of damages;

C. Declare that Anand has lost the right to participate in management as a member and a manager of the LLC, thereby forfeiting any and all authority previously vested in him with respect to Agora;

COMPLAINT

D.     Order that Anand and Bellanger be expelled from Agora, under Cal. Corp. Code § 17706.02(e);

E.     Order correction of inventorship on the '722 Patent and '622 Application by adding Hullinger and de Bont as named inventors;

F.     Judgment that Anand and Bellanger breached their fiduciary duties to Plaintiffs, and that all of the Defendants aided Anand and Bellanger's breach of fiduciary duties;

G.     Declaration that the '722 Patent and '622 Application are owned by Agora, and an injunction ordering Anand and Prevoty to assign such rights to Agora;

H.     Declaration that all stock, profits, investments and other property of Prevoty—including any salary, bonuses or other moneys or benefits received by Anand or Bellanger—rightfully belong to Agora, with an accounting of all such stock, profits, investments and other property;

I.     Order enjoining Anand from preventing Plaintiffs' access to Agora's email accounts and shared drive;

J.     Judgment that Defendants have committed fraud, misappropriated Agora's confidential/proprietary information trade secrets, unfairly competed under California and federal law, and wrongfully converted Agora's property;

K.     Compensatory damages caused by Defendants' wrongful conduct outlined herein, to be proven at trial;

L.     Punitive damages for Defendants' intentional, malicious, fraudulent and/or oppressive conduct, and willful and malicious misappropriation of Plaintiffs' trade secrets;

M.     A preliminary and permanent injunction preventing Defendants' use of Plaintiffs' confidential trade secrets;

31

COMPLAINT

N.   Disgorging of profits and unjust enrichment that have otherwise accrued to Defendants as a result of their wrongful conduct outlined above;

O.   An award of costs and attorneys' fees to the fullest extent permitted by law;

P.   Pre-judgment and post-judgment interest to the fullest extent provided by law;

Q.   Declaration that Defendants have engaged in a civil conspiracy, such that each Defendant is jointly and severally liable for all moneys awarded; and

R.   Such other and further relief as the Court deems just and proper.

DATED:  September  11, 2015    By:  __/s/ Guy Ruttenberg_____

Guy Ruttenberg
RUTTENBERG IP LAW, A
PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260
guy@ruttenbergiplaw.com
*Attorney for Plaintiffs*

32

COMPLAINT