1   STEPHEN A. SCOTT (SBN 67467)
    sscott@hayesscott.com
2   CHARLES E. TILLAGE (SBN 177983)
    ctillage@hayesscott.com
3   DARA M. TANG (SBN 231413)
    dtang@hayesscott.com
4   HAYES SCOTT BONINO ELLINGSON & McLAY, LLP
    203 Redwood Shores Parkway, Suite 480
5   Redwood Shores, California 94065
    Telephone: 650.637.9100
6   Facsimile: 650.637-8071

7   Attorneys for Defendants U.S. VENTURE PARTNERS and
    U.S. VENTURE PARTNERS XI, L.P

8
    SUSAN ALLISON (Bar No. 133448)
9   SAllison@jmbm.com
    TALYA GOLDFINGER (Bar No. 294926)
10  tgoldfinger@jmbm.com
    JEFFER MANGELS BUTLER & MITCHELL LLP
11  1900 Avenue of the Stars, Seventh Floor
    Los Angeles, California 90067-4308
12  Telephone: (310) 203-8080
    Facsimile: (310) 203-0567
13
    Attorneys for Defendant KARLIN VENTURES, LLC
14

15              UNITED STATES DISTRICT COURT

16         FOR THE CENTRAL DISTRICT OF CALIFORNIA

17
    JASON HULLINGER, an                    Case No. 2:15-CV-07185-SJO-FFM
18  individual; BENJAMIN DE BONT,
    an individual; and AGORA              **DECLARATION OF TIANXIANG
19  SYSTEM LLC, a California limited      ZHUO IN SUPPORT OF
    liability company,                    DEFENDANTS U.S. VENTURE
20                                        PARTNERS XI, L.P., U.S. VENTURE
              Plaintiffs,                 PARTNERS' AND KARLIN
21                                        VENTURES, LLC'S JOINT MOTION
          v.                              FOR SUMMARY JUDGMENT, OR
22                                        ALTERNATIVELY, PARTIAL
    KUNAL ANAND, an individual;           SUMMARY JUDGMENT**
23  JULIEN BELLANGER, an
    individual; and PREVOTY, INC., a      Date:     March 20, 2017
24  Delaware corporation,                 Time:     10:00 a.m.
                                          Ctrm:     10C
25            Defendants.                 Judge:    S. James Otero

26                                        Pretrial Conference: May 1, 2017
                                          Trial Date:       May 9, 2017
27

28
    755082

## DECLARATION OF TIANXIANG ZHUO

I, TIANXIANG ZHUO, declare and state as follows:

1.      I was employed by Karlin Asset Management, Inc. from approximately August, 2012 until approximately mid-July 2016.  My responsibilities throughout that time period principally included identifying early stage investment opportunities for the defendant Karlin Ventures, LLC ("Karlin Ventures"), taking care of the due diligence relating to such investment opportunities, and handling Karlin Ventures' investments in such start-companies once approved by Karlin Ventures' investment committee.  I submit this Declaration in order to provide the Court with facts relevant to Karlin Ventures' motion for summary judgment.  I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.      Karlin Ventures is an early-stage venture capital fund that is based in Los Angeles.  Starting in May 2013 until approximately July, 2016, I was the person principally responsible for initiating, performing due diligence for, and managing Karlin Venture's investment in Prevoty, Inc. ("Prevoty").  In connection with my investment-related activities on Karlin Ventures' behalf relating to Prevoty, I was assisted from time to time by Arteen Arabshahi, who had just graduated from college in June 2013, and who was working at Karlin Ventures under my supervision.  As described in more detail below, all of the due diligence that Karlin Ventures performed in connection with its investments in Prevoty was performed by myself and Mr. Arabshahi.

3.      Karlin Ventures first learned about the existence of Prevoty in early May 2013 from LaunchPad LA ("Launchpad").  Launchpad is a startup accelerator, which principally offers selected start-up entities investment funds, office space and access to an investor network.  In the 2013 time period, Launchpad regularly provided me on Karlin Ventures' behalf with information about the current class of start-up companies with which Launchpad was working.  In providing such information,

JMBM | Jeffer Mangels Butler & Mitchell LLP

1  Launchpad does not make specific investment recommendations to Karlin Ventures.

2  Instead, it briefly describes the nature of the start-up's business and/or technology.  If

3  Karlin Ventures is interested in any particular start-up as a potential investment,

4  Launchpad would arrange for an introduction.

5      4.    I first heard about Prevoty in early May, 2013 in a discussion I had with

6  Sam Teller of Launchpad, in which he was bringing me up to date on the latest

7  Launchpad class of companies, which included Prevoty.  Based on his brief

8  description, I asked a Karlin Ventures' intern named Suzanne Felipe to contact

9  Launchpad and ask Launchpad to put Karlin Ventures in touch with Prevoty.  In

10  response to Suzanne's request to Launchpad, on May 7, 2013, Meredith Birchfield of

11  Launchpad sent an email to to Julien Bellanger and Kunal Anand, whom she

12  identified as the "Co-Founders of Prevoty", with a copy to me.  We arranged a

13  meeting in Los Angeles to meet Mr. Bellanger and Mr. Anand and to hear more

14  about what they were working on at Prevoty.

15      5.    I first met with Mr. Bellanger and Mr. Anand on May 14, 2013 at

16  Launchpad's office in Los Angeles.  During that meeting, they informed me that

17  Prevoty was an early stage company involved in the real time application security

18  business.  They told me that the company's technology was partially built, and that

19  they were working to improve it.  There was no in-depth discussion then or any later

20  time of the technology itself or the development process for the technology, none of

21  which I would have understood in any event.

22      6.    At that meeting, Mr. Bellanger and Mr. Anand identified Julien as

23  Prevoty's Chief Executive Officer and Kunal as the Chief Technology Officer.  I also

24  learned at that meeting that there was no immediate investment opportunity available

25  for Karlin Ventures because Prevoty had already closed its "seed 1" round of funding,

26  in which Double M Partners and Plus Capital were the lead investors.  I told them,

27  however, that I planned to keep in touch with them.  At that time, I was intrigued by

28  what little I understood at the time about Prevoty's application security business, and

1    I wanted to see if there might be a later opportunity for Karlin Ventures to invest in

2    Prevoty.

3        7.    At my initial meeting with Mr. Bellanger and Mr. Anand, we also

4    discussed possible contacts that Karlin Ventures might have that might be of interest

5    to Prevoty where I could make introductions.  Making such introductions is a

6    standard aspect of Karlin Ventures' business activities.  In my experience, Karlin

7    Ventures often benefits from making such introductions to other potential investors

8    or potential customers.  Karlin Ventures may benefit because a positive response

9    from other potential investors or possible customers who are knowledgeable in the

10   start-up's industry can serve to validate Karlin Ventures' own interest in a particular

11   start-up company.  I also typically make such introductions where I can easily do so,

12   so that a start-up like Prevoty can see that an investment by Karlin Ventures might

13   provide potential non-monetary value.  As it relates to Prevoty, the various

14   introductions that Mr. Arabshahi and I made on Karlin Ventures' behalf did not

15   provide significant value because, as far as I am aware, no one we introduced to

16   Prevoty became a Prevoty investor and only one entity became a Prevoty customer.

17       8.    I recall making a couple of introductions to Prevoty between my initial

18   meeting in May and August 2013.  As part of the email exchanges involved in

19   making those introductions, Mr. Bellanger sent me a short introduction paper and a

20   deck on SmartFilter, which Mr. Bellanger described as Prevoty's first product.

21   Copies of the introduction and deck that Mr. Arabshahi and I received from Mr.

22   Bellanger shortly after my initial meeting in May 2013 are attached as Exhibit A.  At

23   no time either before or after it invested in Prevoty did Karlin Ventures receive any

24   detailed information about Prevoty's actual technology or how it came to develop its

25   technology.

26       9.    In the July and August 2013 time period, both Mr. Arabshahi and I did

27   some additional background research online to better understand how Prevoty's

28   SmartFilter product compared to the online security platforms of what we perceived

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 13972116v4

1  to be Prevoty's principal competitors.  In mid-August 2013, I discussed a possible

2  investment in Prevoty for the first time with Karlin Ventures' investment committee.

3  In anticipation of that discussion, Mr. Arabshahi and I asked Mr. Bellanger to send us

4  some "high-level" financials that he indicated he was working on.  In making that

5  request, we let him know that we were mostly interested in Prevoty's short term

6  revenue, margin and burn projections.

7       10.    On or about August 22, 2013, I met with Mr. Bellanger and told him

8  that Karlin Ventures would be willing to invest $250,000 then or in the next

9  investment round.  This was the amount that Karlin Ventures' investment committee

10  authorized at that time.  Mr. Bellanger told me in response that Prevoty was not

11  raising funds at that time, but that he would plan to offer a spot to Karlin Ventures in

12  the next round of investments.

13       11.    Karlin Ventures' first opportunity to invest in Prevoty came in

14  December, 2013, as part of Prevoty's second round of Seed Financing, in which

15  Double M and Plus Capital again were the lead investors.  Karlin Ventures invested

16  only $99,999.85, at that time, which was all that Prevoty allocated to Karlin

17  Ventures.  Prior to making that investment, other than the due diligence discussed

18  above, Karlin Ventures limited its due diligence to a review of the financing

19  documents prepared by Prevoty and the lead investors.  Because Karlin Ventures

20  itself was not a lead investor and because it was allocated such a small investment

21  amount, Karlin Ventures itself did not conduct its own legal or historical due

22  diligence on Prevoty.  Instead, it relied on the fact that the lead investors had satisfied

23  themselves in their due diligence that Prevoty was appropriate for the substantially

24  greater dollar amount of investments that they were making as lead investors.

25       12.    Following Karlin Venture's initial investment in December 2013, Mr.

26  Arabshahi and I continued to make occasional introductions to various individuals we

27  thought might be interested in investing in a company focused on web security space

28  technology or might be potential customers for Prevoty.

PRINTED ON
RECYCLED PAPER
LA 13972116v4

- 5 -

13.    Karlin Ventures made an additional investment totaling $115,869.66 in March 2015, as part of Prevoty's Series A Seed financing.  As a result of that additional investment, Karlin Ventures has a total ownership interest in Prevoty of 1.1%.  In deciding to make that additional investment, which again was the most Prevoty was willing to allocate to Karlin Ventures, Karlin Ventures relied on the representations made in the Series A Preferred Stock Purchase Agreement and on the due diligence performed by the lead investor in this round of funding, which was U.S. Venture Partners XI, L.P ("USVP").  More specifically, I did not seek any access to any legal due diligence documents that USVP may have obtained in its role as lead investor, and I did not request or authorize Mr. Arabshahi to seek such access either.  Instead, we relied on the fact that USVP had satisfied itself that there were no due diligence issues that would prevent it from going forward as lead investor.

14.    I have read the Plaintiffs' Third Amended and Supplemental Complaint in this lawsuit ("Complaint").  Based on my review of the allegations specifically relating to Karlin Ventures in Paragraphs 490 and 499 of the Complaint, I understand that Plaintiffs are claiming that Karlin Ventures acquired information in due diligence that showed that Plaintiffs Hullinger and DeBont had jointly worked with Kunal Anand and Mr. Bellanger in a company called "Agora;" that Mr. Anand supposedly stole technology that had been jointly developed by Mr. Hullinger, Mr. DeBont and Mr. Anand; and that Mr. Anand had allegedly used that stolen technology in developing Prevoty's business and products.  These allegations about what Karlin Venture supposedly knew are false.  In connection with both of the Karlin Ventures investments in Prevoty for which I was responsible, Karlin Ventures never learned anything about any prior involvement of Mr. Hullinger or Mr. DeBont or Agora as it related to any technology that Prevoty was using or promoting.  I also never acquired any information about any dissolution of Agora or any cancellation of its articles of organization.

Declaration of Tianxiang Zhuo ISO Karlin Ventures, LLC's MSJ or Partial Summary Judgement

15.     In particular, I never saw or received from anyone in due diligence the unsigned "Agora Systems LLC Operating Agreement" attached as Exhibit J to Plaintiffs' Complaint.  In addition, in connection with Karlin Ventures' investments in Prevoty, I never arranged for Karlin Ventures to access or review any documents that the Complaint alleges in Paragraph 264 and 265 were made available by Prevoty's counsel.  I can personally attest that no one on Karlin Ventures' behalf accessed or reviewed any such documents.

16.     The first notice that I had that Mr. Hullinger or Mr. DeBont or Agora was claiming any wrongdoing by Mr. Anand or Mr. Bellanger as it relates to Prevoty or Prevoty's technology was on or about September 9 or 10, 2015.  At that time, I was provided with a copy of a draft complaint against Mr. Anand, Mr. Bellanger and Prevoty, sent by Plaintiffs' current litigation counsel Guy Ruttenberg (the "Draft Complaint").  A true and correct copy of the Draft Complaint is attached as Exhibit B.

17.     The Draft Complaint I saw in September 2015 did not assert any claims against Karlin Ventures or against any Prevoty investors other than Mr. Bellanger and Mr. Anand.  Having seen that draft complaint, I did not have any basis to believe or know whether or not any of the allegations asserted against Prevoty, Mr. Anand and Mr. Bellanger were true, nor was I made aware when the Draft Complaint was filed in Court.  As far as I know, Karlin Ventures' response to receiving the Draft Complaint was to refer it to counsel.

18.     Karlin Ventures did not make any further investment in Prevoty after it received Plaintiffs' counsel's Draft Complaint.  It did, however, continue to maintain and support its existing limited Prevoty investment, including by making an occasional introduction when requested to do so and by including Prevoty in

Declaration of Tianxiang Zhuo ISO Karlin Ventures, LLC's MSJ or Partial Summary Judgement

19.     occasional events involving others of Karlin Ventures' portfolio companies.

20.     I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and accurate.

Executed on January 13, 2017, at Los Angeles, California.

_____

TIANXIANG ZHUO

Declaration of Tianxiang Zhuo ISO Karlin Ventures, LLC's MSJ or Partial Summary Judgement

# EXHIBIT A

# EXHIBIT A



## SmartFilter Introduction

Protect your web applications from Cross-Site Scripting attacks

**CONFIDENTIAL**

## WHAT ARE CONTENT ATTACKS?

Today's Internet is powered and created by users. Innovative interaction models allow users to create more content than ever before. Unfortunately, malicious users have crafted sophisticated attacks embedded in content, referred to as Content Attacks.

The largest Content Attack is Cross-Site Scripting (XSS). Due to its simplicity of execution, XSS is one of the most common web attack vectors — up to 70% of all websites are vulnerable. Simply put, XSS is the execution of JavaScript in web/mobile browsers and rich clients. XSS typically happens when untrusted content is presented to a user. Until recently, XSS was typically used to deface websites or steal user cookies. Today, however, organized hackers have started using XSS as a spearhead to more complex targeted attacks. One such example is the theft of administrator cookies/credentials to further gather information from internal applications/databases.

The stakes have never been higher: aside from websites that ingest user input, companies that deploy collaboration tools/applications, such as SharePoint, are also vulnerable to targeted XSS attacks.

## HOW CAN I PROTECT MY ORGANIZATION FROM CONTENT ATTACKS?

### HOW TRADITIONAL APPLIANCES APPROACH THE ISSUE

Traditional security appliances, such as Web Application Firewalls (WAF), cannot accurately protect organizations from sophisticated XSS attacks. Since WAFs are extensions of network firewalls, they lack the contextual awareness of how content will be presented and persisted. In the case of a recent XSS attack against the Pentagon, a malicious string of content was able to bypass a WAF. The attacker was able to gain administrative credentials as well as access to confidential email.

Traditional appliances are dependent on past-signatures. Unfortunately, new attack variants, commonly referred to as "zero-day" exploits have the ability to bypass existing filters, making WAFs ephemerally invalid. This can create a false sense of security. Additionally, WAFs can ruin content fidelity as they lack an understanding of incoming content syntax and semantics.

PREVOTY

CONFIDENTIAL

ZHUO_001665

## HOW SMARTFILTER PROTECTS ORGANIZATIONS FROM CONTENT ATTACKS

Prevoty has developed SmartFilter – a robust security solution that protects organizations from XSS attacks. From external web applications to internal SharePoint deployments, SmartFilter is designed to work in all segments of an enterprise.

At the core, SmartFilter focuses on a contextual security model. As an example, SmartFilter for websites can support two of the most significant contexts: how data will be presented and persisted/exchanged between data stores/servers. Rather than a firewall that intercepts every request/response, SmartFilter can be called on an ad-hoc basis. This allows for greater accuracy and better performance.

SmartFilter does not depend on definitions or heuristics like traditional scanners and WAFs. The technology is based around carefully constructed tokenizers, parsers, and profilers that in unison have the unique ability to perform syntactic/semantic operations on content. This gives SmartFilter a significant edge as a proactive solution:  no remediation is required for new content attack vectors.

## WHERE CAN I USE SMARTFILTER IN MY ORGANIZATION?

**Web Applications** – Designed to protect websites and users from XSS attacks. SmartFilter can be deployed as a binary/virtual machine (Linux), as an IIS add-on (Microsoft) or as a cloud-based solution. Cloud client libraries have been developed for C#, Go, Java, PHP, Python, and Ruby.

**SharePoint** – Designed to protect your organizations confidential and sensitive data in SharePoint from XSS attacks. SmartFilter can be installed as a plugin for SharePoint 2010 and 2013 editions.

## FURTHER INFORMATION

Prevoty technologies have been deployed in mission-critical environments. For further information, please contact us at: information@prevoty.com

PREVOTY

CONFIDENTIAL

ZHUO_001666



CONFIDENTIAL

ZHUO_001667

# PREVOTY

SECURITY ON YOUR TERMS

CONFIDENTIAL

ZHUO_001668

**Hackers have an infinite amount of time to prepare a cross-site scripting attack.** Your web application has a split-second to defend itself.

PREVOTY

CONFIDENTIAL

ZHUO_001669

# SMART FILTER

Classify trusted from malicious content while protecting integrity

Not a firewall - a contextual web security platform

No signatures or blacklists - "allow what you want" model

Delivers instant notifications and analytics around attack severity

PREVOTY

CONFIDENTIAL

ZHUO_001670

# TECHNOLOGY

Deconstructs and analyzes content like a web browser

Greater accuracy and performance over conventional firewalls; filter is called before data is saved to the DB or presented to a user

Build site-specific rules to selectively allow content (HTML tags, attributes, protocols, etc.)

PREVOTY 4

CONFIDENTIAL

ZHUO_001671

# USE CASES

Remove all HTML/CSS, including all tags, attributes and protocols

Allow a subset of HTML and rich text

Balance HTML tags in user input (prevent template breaks)

Convert all links to a URL shortener/redirector (e.g. bitly)

PREVOTY

CONFIDENTIAL

ZHUO_001672

# INTEGRATIONS

REST API with client-specific libraries (Go, Java, Node, Python, Ruby)

Virtual Machine for Linux-based environments

Microsoft ISAPI module for IIS (covers ASP.NET sites and SharePoint)

PREVOTY

CONFIDENTIAL

ZHUO_001673

# EXHIBIT B

# EXHIBIT B

# CONFIDENTIAL

| | |
|---|---|
| **From:** | Guy Ruttenberg <Guy@ruttenbergiplaw.com> |
| **Sent:** | Tuesday, September 08, 2015 8:30 PM |
| **To:** | steve.k@usvp.com; dafina.t@usvp.com |
| **Cc:** | eric@ingroup.com; tim.merel@digi-capital.com; david@karlinam.com; Bassil Madanat; William Stevens |
| **Subject:** | Impending Litigation Against Prevoty, Kunal Anand and Julien Bellanger (Time-Sensitive) |
| **Attachments:** | 9-8-2015 Letter from G. Ruttenberg to S. Krausz and D. Toncheva .pdf; 9-8-2015 Draft Complaint.pdf |

Dear Mr. Krausz and Ms. Toncheva:

Please see the attached letter and draft Complaint.  As detailed in the letter, by the end of the week, we intend to file suit in Federal Court against Prevoty, Anand and Bellanger on behalf of our clients Jason Hullinger, Benjamin de Bont and Agora Systems, LLC.  We invite you to meet with us in advance.

Please confirm your receipt of this email.

Best regards,
Guy Ruttenberg
Ruttenberg IP Law, A Professional Corporation _____
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Office:     +1 310 627 2271
Mobile:    +1 213 268 1270
Facsimile: +1 310 627 2260

NOTICE: The information contained in this e-mail and any accompanying documents is confidential, may be privileged, and is intended solely for the person and/or entity to whom it is addressed (i.e. those identified in the "To" and "cc" box). This information is the property of Ruttenberg IP Law, A Professional Corporation. Unauthorized review, use, disclosure, or copying of this communication, or any part thereof, is strictly prohibited and may be unlawful. If you have received this e-mail in error, please return the e-mail and attachments to the sender and delete the e-mail and attachments and any copy from your system.



DEPOSITION
EXHIBIT
301
12-12-16
Toncheva

1

USVP_00370

**CONFIDENTIAL**

**RUTTENBERG IP LAW**
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920, Los Angeles, CA 90067
Tel: (310) 627 2270 Fax: (310) 627 2260

September 8, 2015

***VIA EMAIL***
Mr. Steve Krausz, General Partner (steve.k@usvp.com)
Ms. Dafina Toncheva, Partner (dafina.t@usvp.com)
U.S. Venture Partners
2735 Sand Hill Road
Menlo Park, CA 94025

RE:   **Impending Litigation Against Prevoty, Inc., Kunal Anand & Julien Bellanger**

Dear Mr. Krausz and Ms. Toncheva:

    I write to alert you of an impending lawsuit against one of your portfolio companies—namely, Prevoty, Inc. ("Prevoty"). My firm and I represent Jason Hullinger, Benjamin de Bont and Agora Systems, LLC ("Agora"). On behalf of my clients, we intend to initiate litigation against Prevoty and its co-founders Kunal Anand and Julien Bellanger no later than close of business on **Friday, September 11, 2015.** As detailed in our Complaint (enclosed), my clients have strong claims to ownership of Prevoty's stock, technology and other property. I understand that U.S. Venture Partners ("USVP") led a Series A investment round in Prevoty earlier this year. I also understand that the two of you serve as board members for Prevoty. As a courtesy, I wanted to raise these issues with you directly, with the hope that we could explore a resolution, before filing litigation.

    Several years ago, Hullinger, de Bont and Anand collaborated to develop an application security monitoring system for managing internet-based user-generated content. The three formed a business around this technology, and they agreed to register their company as a California limited liability company (namely, Agora). Hullinger, de Bont and Anand expressly agreed that each of them owns one-third of the company. Anand was tasked with filing the relevant paperwork with the California Secretary of State. Anand confirmed (in writing) that he, Hullinger and de Bont each own one-third of Agora. Indeed, Anand represented to Hullinger and de Bont (in writing) that he had recorded all three individuals as equal members/owners of the LLC.

    Agora made significant progress advancing on the technology, commercial and investment front. The three individuals (Hullinger, de Bont and Anand) spent more than a year developing the technology, which was incorporated into various embodiments, including a product called "Agora Blue." The company also developed detailed technology documents and proprietary software for enabling this technology. Agora provided various proposals to notable social media companies. Agora earned modest revenue, which was deposited in the company's Wells Fargo Bank Accounts (where Hullinger and Anand held signing authority). Hullinger, de Bont and Anand assembled detailed investment decks, which were presented to prominent VC firms—with positive feedback. The three also created internal business documents, with titles and anticipated salaries for each. Notably, Anand held himself out as the CEO of Agora.

USVP_00371

**CONFIDENTIAL**

Steve Krausz and Dafina Toncheva
September 8, 2015
Page | 2

    Anand introduced his friend Julien Bellanger to my clients in late 2012. Anand provided
Bellanger with an email account on the Agora network, and included Bellanger in the
management's internal emails concerning technology and investment opportunities, among other
things. At one point, Anand proposed to de Bont that Bellanger might come on board as CEO of
Agora, with Anand presumably taking over as CTO. I understand that Bellanger serves as CEO of
Prevoty, with Anand serving as CTO.

    Through the Agora entity, Hullinger, de Bont and Anand also committed to patent their
technology—with the obligation to assign the patent to Agora. Anand represented to de Bont and
Hullinger that he was in the process of preparing patent applications on the company's technology.
He forwarded a proposal from the Cooley law firm, and recommended that Agora engage the firm.
Anand also confirmed—in writing—that he, de Bont and Hullinger would all be named as inventors
on the prospective patents (to the exclusion of Bellanger), given Bellanger's late arrival after the
three founders had already developed the technology.

    All of these efforts came to an abrupt standstill on February 18, 2013. On that date, Anand
informed Hullinger and de Bont that he was unilaterally shutting down the company because of his
own personal problems. (Anand cited his parents' divorce as the reason.) Anand immediately shut
out Hullinger and de Bont from their Agora email accounts and physically closed off their access to
technical and other documents on the Agora network.

    But Anand did not simply shut down the company; rather, he and Bellanger conspired to
misappropriate Agora's physical and intellectual property, re-start Agora under a new name
(Prevoty, Inc.) and exclude Hullinger and de Bont from the company. Public records show that
Bellanger registered the prevoty.com domain name on February 10, 2013—even before Anand
informed my clients that he was shutting down Agora. Anand and Bellanger registered Prevoty as a
Delaware Corporation on March 6, 2013. On March 15, 2013 (a little more than three weeks after
his purported shut-down of Agora), Anand filed the promised patent applications on Agora's
technology—except Anand failed to name Hullinger and de Bont as co-inventors. Anand then
assigned Agora's patents to Prevoty. Building on the momentum generated by my clients, Anand
and Bellanger used Agora's source code, proprietary information and other technology to create
Prevoty. Anand and Bellanger quickly created an investor deck for Prevoty by recycling
information from the Agora presentations. Apparently, Anand and Bellanger completed their first
seed round by May 20, 2013—only three months after informing my clients that he was shutting
down Agora—with another seed round following in December 2013.

    Anand and Bellanger tried to cover their tracks. As explained above, they physically shut
off my clients' access to their emails and other documents. Initially, in response to an inquiry from
Hullinger, Anand pretended that Prevoty had nothing to do with security or Agora's business.
Then, on October 24, 2014, Anand proceeded to dissolve Agora as a limited liability company.
Despite his written assurances to de Bont and Hullinger that they were equal co-members of Agora,
Anand falsely represented to the California Secretary of State that he was the sole member and that
all members of Agora had voted for dissolution. Based on Anand's false representations, the
California Secretary of State dissolved the company. Compounding his earlier misconduct, Anand
later emptied Agora's bank accounts and kept the cash for himself—and proceeded to close the
accounts. Our investigation has been able to confirm the salient facts alleged in the Complaint.

    My clients' claims are legally and morally correct. Anand and Bellanger defrauded and
breached their fiduciary duties to my clients. My clients are the true owners of Prevoty—including

**USVP_00372**

**CONFIDENTIAL**

Steve Krausz and Dafina Toncheva
September 8, 2015
Page | 3

the company's patents, source code, technology and other assets. Among other things, my clients will ask the Court to (i) re-institute Agora under California Government Code § 12261(a)(1) and/or 12261(a)(2); (ii) expel Anand and Bellanger as members of Agora under Cal. Corp. Code § 17706.02(e); (iii) correct the inventorship of the patents to add my clients as inventors under 35 U.S.C. § 256; (iv) order assignment of the patents to Agora; (v) order restoration of all intellectual and personal property to my clients; (vi) assess damages—including punitive damages; and (vii) declare that my clients are the true owners of Prevoty. We are also likely to bring claims for patent infringement and copyright infringement once Agora is revived and the technology is assigned to Agora.

We are also investigating whether other third parties—including investors and board members—may have knowingly aided the misconduct described in the Complaint. Surely, a proper due diligence should have revealed my clients' role and many of the facts alleged in the Complaint. In responding to this letter, it would be helpful to know to what extent the investors and board members have known of the facts alleged in the Complaint.

My clients have opted to reach out to you in an effort to resolve this matter before proceeding to litigation. To the extent these allegations come as a surprise to you, my clients also wanted to give you an opportunity to address this wrongdoing. That said, time is of the essence for my clients, and they want these egregious wrongs remedied immediately. Given the past fraud and misappropriation, we are also concerned that available funds and documents will disappear. Accordingly, my clients presently intend to file their Complaint by close of business on Friday, September 11, 2015. Extending that deadline will likely require assurances or security arrangements. I am available to speak or meet with you before that deadline. We also reserve the right to file our Complaint earlier than that if we do not hear back from you with a meaningful response upon your receipt of this letter.

If you would like to contact me directly, I am available to speak by phone at (310) 627-2270 or by email at guy@ruttenbergiplaw.com. Thank you in advance for your prompt attention to this matter.

Best regards,

Guy Ruttenberg
Ruttenberg IP Law, A Professional Corporation

Enclosures

cc:

| | |
|---|---|
| Mark Mullen, Double M Partners, LP | Via U.S. Mail Only |
| Eric Hahn, Inventures Group | Via Email Only: eric@ingroup.com |
| Tim Merel, Digi-Capital | Via Email Only: tim.merel@digi-capital.com |
| Shinya Akamine, Core Ventures Group | Via U.S. Mail Only |
| David Cohen, Karlin Ventures | Via Email Only: david@karlinam.com |

USVP_00373

**CONFIDENTIAL**

Draft

1   Guy Ruttenberg, Bar No. 207937
    guy@ruttenbergiplaw.com
2   Bassil Madanat, Bar No. 285280
    bassil@ruttenbergiplaw.com
3   RUTTENBERG IP LAW, A PROFESSIONAL
    CORPORATION
4   1801 Century Park East, Suite 1920
    Los Angeles, CA 90067
5   Telephone: (310) 627-2270
    Facsimile: (310) 627-2260
6
7   *Attorney for Plaintiffs*
    Jason Hullinger, Benjamin de Bont and
8   Agora Systems, LLC
9              **UNITED STATES DISTRICT COURT**
10          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11
    JASON HULLINGER,                    Case No. _____
12   an individual,
                                        **COMPLAINT AND DEMAND FOR**
13                                       **JURY TRIAL FOR:**
    BENJAMIN DE BONT,
14   an individual,                     1.  **JUDICIAL REINSTATEMENT OF**
                                             **AGORA**
15                                       2.  **WRONGFUL DISSOLUTION OF**
    AGORA SYSTEMS, LLC,                      **AGORA**
16   a California limited liability      3.  **JUDICIAL ORDER TO EXPEL**
    company,                             4.  **CORRECTION OF**
17                                           **INVENTORSHIP**
                                         5.  **BREACH OF FIDUCIARY DUTY**
18                        Plaintiffs,    6.  **DECLARATORY JUDGMENT OF**
                                             **OWNERSHIP OF INTELLECTUAL**
19            v.                             **PROPERTY**
                                         7.  **DECLARATORY JUDGMENT OF**
20   KUNAL ANAND,                            **OWNERSHIP OF PREVOTY**
    an individual,                       8.  **AIDING AND ABETTING**
21                                           **BREACH OF FIDUCIARY DUTY**
                                         9.  **FRAUD**
22   JULIEN BELLANGER,                  10.  **MISAPPROPRIATION OF TRADE**
    an individual,                           **SECRETS**
23                                       11.  **VIOLATION OF LANHAM ACT**
                                         12.  **VIOLATION OF CA UNFAIR**
24   PREVOTY, INC.,                           **COMPETITION LAW § 17200**
    a Delaware corporation,             13.  **CONVERSION**
25                                       14.  **TRESPASS TO CHATTELS**
                                         15.  **CIVIL CONSPIRACY**
26
                         Defendants.    **JURY TRIAL DEMANDED**
27
28

                        **COMPLAINT**

                                                        USVP_00374

CONFIDENTIAL

1   **COMPLAINT**

2   Plaintiffs Jason Hullinger, Benjamin de Bont and Agora Systems, LLC

3   (collectively "Plaintiffs"), by and through their undersigned attorneys, complain as

4   follows:

5   **NATURE OF ACTION**

6   1.   This action arises from Defendant Kunal Anand's blatant breach of his

7   fiduciary duties as a co-member, managing member and CEO of Agora Systems,

8   LLC ("Agora") and subsequent misappropriation of intellectual property and other

9   proprietary information and property rightfully owned by Agora, to the detriment of

10  the company and its other co-founders, Jason Hullinger and Benjamin de Bont.

11  2.   Despite what appeared to be a productive and trustworthy business

12  relationship between Anand, Hullinger and de Bont, Anand ultimately defrauded the

13  latter two members, unilaterally dissolved Agora, surreptitiously formed a competing

14  business, Prevoty, Inc. ("Prevoty"), and misappropriated Agora's online security

15  technology and source code for use in conjunction with Prevoty's business.

16  Defendant Bellanger willingly and knowingly assisted Anand in these actions.

17  3.   By this action, Plaintiffs seek, among other things, judicial reinstatement

18  of the wrongfully dissolved Agora, a declaratory judgment reinstating Plaintiffs' title

19  to their physical and intellectual property that was wrongfully converted by the

20  defendants, injunctive relief halting the defendants' ongoing misappropriation and

21  infringement of Plaintiffs' intellectual property rights, and damages for the numerous

22  violations that the defendants have committed thus far.

23  **PARTIES**

24  4.   Plaintiff Jason Hullinger ("Hullinger") is an individual residing in Los

25  Angeles, California.

26  5.   Plaintiff Benjamin de Bont ("de Bont") is an individual residing in

27  Seattle, Washington.

28  6.   Plaintiff Agora Systems, LLC ("Agora") was a limited liability company

1

COMPLAINT

USVP_00375

CONFIDENTIAL

1   organized under the laws of California.  Agora was wrongfully dissolved, and this

2   action seeks (among other things) to reinstate the company.

3       7.      Defendant Kunal Anand ("Anand") is an individual residing in

4   Calabasas, California.

5       8.      Defendant Julien Bellanger ("Bellanger") is an individual residing in Los

6   Angeles, California.

7       9.      Defendant Prevoty, Inc. ("Prevoty") is a corporation organized and

8   existing under the laws of Delaware, having its principal place of business in Los

9   Angeles, California.

10                      **JURISDICTION AND VENUE**

11      10.     This Court has subject matter jurisdiction for this action pursuant to 28

12   U.S.C. §§ 1331, 1338 and 1367.

13      11.     This Court has personal jurisdiction over Defendants because, among

14   other things, Defendants are California citizens and residents of the State of

15   California, and they live and work in this Judicial District.  Defendant Prevoty

16   maintains a business location in the State of California, and transacts business by

17   promoting, advertising and selling products and/or services in the State of California,

18   including products and/or services that infringe Plaintiffs' intellectual property rights.

19      12.     Venue is proper under 28 U.S.C. §§ 1391 (b) and (c) because, among

20   other things, all Defendants are residents of this Judicial District and the State of

21   California.  In addition, a substantial part of the events or omissions giving rise to

22   Plaintiffs' claims occurred in this Judicial District, and a substantial part of the

23   property that is the subject of this action is situated in this Judicial District.

24   Defendants also operate at least one office location within this District, transact

25   business within this District and promote, advertise and sell their infringing products

26   and/or services in this District.

27

28

2

COMPLAINT

USVP_00376

**CONFIDENTIAL**

## FACTUAL BACKGROUND

### Hullinger, de Bont and Anand Are Co-Founders of Agora

13. Hullinger, de Bont and Anand partnered to create a company whose purpose would be to develop an application security monitoring system for managing internet-based user-generated content. Specifically, the technology would use a new method of parsing, tokenizing and data filtering (called content transformation) to prevent malicious users from attacking applications and networks in order to gain sensitive information from other users or the system's database. In doing so, the technology would reduce the risks of various content injections, such as cross-site scripting (XSS) and structured query language (SQL) injections, by these malicious users.

14. To formalize their relationship, Hullinger, de Bont and Anand agreed to form Agora as a California limited liability company.

15. Hullinger, de Bont and Anand agreed that each of them would own an equal share of Agora.

16. The three co-founders further agreed that each of them would hold an officer position within Agora. Anand held the title of Chief Executive Officer (CEO), Hullinger held the title of Chief Technology Officer (CTO) and de Bont held the title of Chief Operating Officer (COO).

17. Anand was tasked with filing paperwork with the California Secretary of State memorializing the co-founders' relationship and understandings. Anand registered Agora with the California Secretary of State on or about February 22, 2012. The Articles of Organization for Agora indicate that the limited liability company would be managed by all of its members.

18. On March 30, 2012, Anand filed Agora's Statement of Information with the California Secretary of State, identifying himself as the sole managing member of Agora.

19. On May 1, 2012, Anand sent Hullinger and de Bont an email

3

COMPLAINT

USVP_00377

**CONFIDENTIAL**

1    representing that the "LLC has been amended" to include both of them as co-
2    founders (the "May 1, 2012 email"). In the May 1, 2012 email, Anand represented
3    that the "revised Statement of Information document has been sent to the State of
4    California." Addressing the members' respective ownership interests, Anand wrote:
5    "Since there's an uneven percentage with there being 3 co-founders, it is set up as:
6    Ben: 33.33%[,] Jason: 33.33%[,] Kunal: 33.34%."  Anand continued: "We can
7    change these percentages without going through the state – we can
8    rock/paper/scissors for the .01%."  A true and correct copy of the May 1, 2012 email
9    is attached hereto as Exhibit A.

10         20.    Hullinger and de Bont reasonably and justifiably relied upon Anand's
11    representations in the May 1, 2012 email, as well as other representations, promising
12    that the California Secretary of State records would reflect the equal ownership and
13    membership of each of Anand, Hullinger and de Bont.  Hullinger and de Bont
14    believed that the California Secretary of State records were amended to reflect their
15    ownership interests, as promised by Anand.

16         21.    Relying on Anand's representations, Hullinger and de Bont continued to
17    collaborate with Anand as part of Agora.  Over the course of 2012, the three worked
18    together to develop security software technology, including a product that they
19    promoted under the name "Agora Blue."

20         22.    Through Agora, Hullinger, de Bont and Anand also worked together to
21    reach out to prospective investors and potential customers, holding themselves out as
22    co-founders of Agora, as well as a "cohesive and hard-working team," in pitch decks
23    and presentations.

24         23.    In conjunction with developing security software technology including
25    Agora Blue, the three (Hullinger, de Bont and Anand) also collaborated to develop
26    source code for the technology ("Agora Blue Source Code").

27         24.    Hullinger, de Bont and Anand promoted Agora Blue as a product
28    developed for and owned by Agora.  For example, Agora's Company Information

4

**COMPLAINT**

USVP_00378

**CONFIDENTIAL**

1   PowerPoint (the "Company Information PowerPoint"), which was intended for
2   distribution to potential investors, stated: "Agora makes data safe through
3   *revolutionary* security appliances and professional services . . . . [The] [f]irst product
4   is Agora Blue – developed and tested over the last year[.]"

5        25.   While developing their flagship Agora Blue technology, Hullinger, de
6   Bont and Anand also worked to establish the structure and operations of Agora.  For
7   example, the team registered the domain name agorasec.com, and each of the three
8   co-founders was assigned an email account ending with @agorasec.com.

9        26.   The three co-founders also collaborated to create detailed financial
10  projections outlining their working capital, disbursements, costs and staff needs.  As
11  reflected in these financial projections, each of the three co-founders was expected to
12  draw an annual salary of $175,000.

13       27.   On or around May 21, 2012, Agora entered into an agreement with a
14  customer, through which Agora was retained and compensated to perform an
15  "Application Penetration Test to assess the level of security awareness evident in the
16  design of [the customer's] web sites and API's to estimate the likelihood of
17  application issue."  Agora utilized the application security monitoring technology
18  developed by Hullinger, de Bont and Anand to complete the Application Penetration
19  Test by June 8, 2012.

20       28.   The three co-founders also agreed to open bank accounts for Agora.  On
21  or around June 8, 2012, Anand and Hullinger opened four bank accounts for Agora
22  in Los Angeles, with each of them having signing authority over the accounts.
23  When the accounts were created, de Bont was not in Los Angeles and therefore
24  could not be added to the accounts.  Per the May 1, 2012 email, it was anticipated
25  that de Bont would be added as a signatory to the accounts at a later time.

26       29.   Throughout 2012, Anand repeatedly acknowledged to potential
27  customers and investors that he, Hullinger and de Bont were co-founders of Agora.
28  On or around July 19, 2012, a prospective investor noted that Hullinger, de Bont and

5

COMPLAINT

USVP_00379

**CONFIDENTIAL**

1    Anand were "an exceptionally talented team." On or around July 20, 2012, Anand

2    wrote to his two co-founders (Hullinger and de Bont) noting that the prospective

3    investor was "impressed with us as a team."

4                          **Anand Introduces Bellanger**

5        30.    In or around December 2012, Anand introduced Hullinger and de Bont

6    to his friend, Defendant Bellanger.  Anand told Hullinger and de Bont that Bellanger

7    had strong industry connections and could be very helpful in securing investment

8    funding for Agora.  Based on these potential connections, Anand suggested that

9    Bellanger join Agora.

10       31.    On or around January 12, 2013, Anand sent an email to Hullinger and de

11   Bont, confirming that he "just gave Julien an Agora email (julien.bellanger)."

12       32.    By receiving an email account on the agorasec.com domain, Bellanger

13   also received access to Agora's confidential and proprietary materials.

14       33.    On information and belief, Bellanger and Anand discussed various

15   possible roles for Bellanger as part of Agora. On information and belief, it was

16   contemplated that Bellanger might act as an advisor for Agora.  At one point, it was

17   proposed that Bellanger might assume the position of CEO at Agora.  However, de

18   Bont and Hullinger never agreed to give up any equity or ownership interest in

19   Agora at any time.

20       34.    Although Bellanger's role at Agora was not finalized, he became privy

21   to communications regarding pitches to customers, funding ideas and optimization

22   of the Agora Blue technology, putting him in a special position of trust with respect

23   to Agora and its members. To be sure, after Bellanger became involved with Agora,

24   he worked with Hullinger, de Bont and Anand to pitch the company to various

25   potential customers.  Anand included Bellanger in Agora's strategic decisions and

26   fundraising efforts.

27       35.    For example, on February 5, 2013, Anand sent Hullinger, de Bont and

28   Bellanger a status report on Agora's progress with its demos for two potential social

**COMPLAINT**

USVP_00380

**CONFIDENTIAL**

1   networking customers.  In the status report, Anand indicated that Agora was getting

2   "closer to a commercial agreement – something that's really going to be helpful for

3   fundraising."

4       36.   By taking on a role with Agora, holding himself out as a part of the

5   company's team, and accepting access to the company's proprietary and confidential

6   materials, Bellanger also undertook fiduciary obligations to Agora and its members,

7   including Hullinger and de Bont.

8                   **Agora Planned to Seek Patent Protection**

9       37.   As part of their innovation strategy, the Agora members decided to

10   patent their proprietary technology, including the technology underlying Agora

11   Blue.

12       38.   In late 2012 or early 2013, the co-founders searched for counsel who

13   could help them secure patent protection.  Acting on behalf of the LLC, Anand

14   interviewed potential law firms, and forwarded along to Hullinger and de Bont at

15   least one proposal from a major national law firm.

16       39.   Anand, Hullinger and de Bont recognized that they worked together on

17   the technology underlying Agora Blue and, therefore, that each should be identified

18   as an inventor on any prospective patent applications.

19       40.   Despite Bellanger's new involvement with Agora, the original co-

20   founders reaffirmed that each of them should be listed as inventors on any patents

21   relating to the Agora Blue—to the exclusion of Bellanger, who had joined later and

22   therefore did not contribute to conception of the technology.  Bellanger was of the

23   same view.

24       41.   On or about February 5, 2013, Anand explicitly confirmed to Hullinger

25   and de Bont that "[Bellanger] is not on the patents – he joined after the IP was

26   developed . . . he already knows that . . . the 'inventors' of the patent will be us

27   three . . . for [B]lue itself."  Anand further indicated that things were "all starting to

28   come together."

7

COMPLAINT

**CONFIDENTIAL**

<u>Anand's Unilateral Shutting-Down of Agora</u>

42.   Anand and Bellanger conspired to misappropriate Agora's physical and intellectual property, re-start Agora under a new name (Prevoty, Inc.) offering substantially the same products and services as Agora, and shut out Hullinger and de Bont from the company.

43.   On or around February 18, 2013, Anand told Hullinger and de Bont that he would be unilaterally shutting down Agora's email and network, citing his parents' divorce as the primary factor.

44.   On or around February 18, 2013, Anand unilaterally cut-off Hullinger's and de Bont's access to their agorasec.com email accounts and cut-off their access to other documents stored on the agorasec.com network.

45.   As a result of Anand's actions, Hullinger and de Bont had no way of accessing much of Agora's materials. They also could not communicate through their agorasec.com email accounts.

46.   On October 24, 2014, Anand unilaterally filed a Certificate of Cancellation for Agora with the California Secretary of State. In the filing with the California Secretary of State, Anand purported to be the sole member of Agora. In the same document, Anand further represented that the dissolution of Agora "was made by the vote of all of the members."

47.   Anand's statements on the Certificate of Cancellation were materially and willfully false. Anand was not the sole member of Agora. Indeed, his statement to this effect directly contradicts his agreement with Hullinger and de Bont that the three were equal members and co-founders of Agora. Contrary to his statement, there was no "vote of all of the members" of Agora authorizing dissolution of the LLC.

48.   Anand's statements on the Certificate of Cancellation also suggest that, contrary to his promises and representations in the May 1, 2012 email, Anand did

8

**COMPLAINT**

USVP_00382

CONFIDENTIAL

1  not file papers with the California Secretary of State reflecting the true ownership

2  percentages and membership status of Hullinger, de Bont and himself.

3      49.   Anand did not seek consent from either Hullinger or de Bont to file the

4  Certificate of Cancellation.  Hullinger and de Bont did not consent to any dissolution

5  of Agora, much less Anand's filing of the Certification of Cancellation.

6      50.   Anand also did not provide Hullinger or de Bont notice that he was

7  filing the Certificate of Cancellation.

8      51.   Although purporting to shut down Agora, Anand failed to properly wind

9  up the company.  For example, Anand did not distribute to Agora's members any of

10  the company's remaining assets, including intellectual property, cash assets and

11  other property belonging to Agora.

12      52.   Anand also embezzled the cash assets of Agora by withdrawing all cash

13  from the Agora bank accounts, without making any distribution to the other

14  members.  Over a period of months, Anand slowly deducted money from the Agora

15  bank accounts.

16      53.   On or around June 6, 2015, Anand withdrew the remaining balances

17  from Agora's four bank accounts.  A true and correct copy of Anand's last

18  withdrawal confirmation from Agora's main account is attached hereto as Exhibit B.

19      54.   Anand did not notify Hullinger or de Bont that he was withdrawing

20  funds from Agora's accounts.

21      55.   Anand also unilaterally closed Agora's bank accounts without notifying

22  Hullinger or de Bont.

23  **Creation of Prevoty & Misappropriation of Agora's Intellectual Property**

24      56.   Bellanger and Anand made preparations to exclude Hullinger and de

25  Bont even before Anand shut out his original co-founders from their email accounts

26  and the company's share drive on February 18, 2013.

27      57.   Bellanger registered the domain name Prevoty.com on or around

28  February 10, 2013.

9

COMPLAINT

USVP_00383

CONFIDENTIAL

1    58.    On or around March 6, 2013, Bellanger and/or Anand incorporated
2  Prevoty, Inc. ("Prevoty") as a Delaware corporation.  Corporate documents for
3  Prevoty identify Bellanger and Anand as executive officers and directors of the
4  company.   Bellanger is identified as co-founder and CEO of Prevoty on the
5  company's website, while Anand is identified as co-founder and CTO.
6    59.    Prevoty offers the same or substantially the same security services as
7  Agora.
8    60.    For example, Prevoty offers security software for minimizing the risks
9  of malicious cross-site scripting and SQL injections, which may compromise user or
10 database information.
11   61.    According to Prevoty's website, www.prevoty.com, "Prevoty is a
12 security software company dedicated to protecting users and enterprises by solving
13 the difficult challenges related to application security."  Prevoty's website also states
14 that the company "has developed an application security engine that monitors and
15 protects your applications at runtime[,] . . . . providing real-time visibility into what
16 threats the applications are actually seeing and the option of transforming or
17 blocking content and database queries so that everything the application processes is
18 safe."
19   62.    On information and belief, Prevoty uses the same or substantially the
20 same proprietary source code, or a derivation thereof, as the source code developed
21 by Hullinger, de Bont and Anand at Agora.
22   63.    On March 15, 2013, Anand filed two patent applications with the United
23 States Patent & Trademark Office (the "PTO"):   U.S. Patent Application No.
24 13/839,622 (the "'622 Application") entitled "Systems and Methods for Tokenizing
25 User-Generated Content to Enable the Prevention of Attacks" and U.S. Patent
26 Application No. 13/839,807 (the "'807 Application") entitled "Systems and Methods
27 for Parsing User-Generated Content to Prevent Attacks."  Both applications list
28 Anand as the sole inventor.

10

COMPLAINT

USVP_00384

**CONFIDENTIAL**

64.  On August 4, 2015, the '807 Application issued as U.S. Patent Number 9,098,722 (the "'722 Patent"), listing Anand as the sole inventor, with Prevoty as the assignee.

65.  The '622 Application is still pending before the United States Patent & Trademark Office.

66.  Not surprisingly, the systems and methods described in the '722 Patent and '622 Application mirror the technology developed by Hullinger, de Bont and Anand while they were building and promoting Agora, namely, the Agora Blue technology.

67.  The technology underlying Agora Blue is substantially equivalent to the claimed inventions recited in the '622 Application and '722 Patent, and is the same or substantially similar technology offered by Prevoty today.

68.  The '622 Application and the '722 Patent describe systems and methods to secure user generated content using tokenization and parsing.  Tokenization is a process by which user-generated content is tagged into defined categories for further security processing.  Parsing is the process of identifying and removing non-standard and malicious content.

69.  The claimed inventions recited in the '622 Application and '722 Patent were conceived of and developed by Hullinger, de Bont and Anand in their respective roles at Agora, as the company was attempting to productize new modes of application security monitoring.

70.  The claimed inventions of the '622 Application and '722 Patent belong to Agora.  By unilaterally assigning the '622 Application and the '807 Application to Prevoty, Anand and Prevoty have unlawfully taken possession of these applications, which rightfully belong to Agora.

71.  On information and belief, Anand and Bellanger secretly collaborated to develop Prevoty, a competing business, while still working with Hullinger and de Bont at Agora.

11

**COMPLAINT**

CONFIDENTIAL

72.   On information and belief, Bellanger encouraged Anand to dissolve Agora, establish Prevoty and exclude Hullinger and de Bont from the new company in order to exploit the benefits of Hullinger and de Bont's efforts for themselves.

73.   On information and belief, Bellanger assisted Anand in incorporating Prevoty and procuring internet space for the new company.

74.   As a member and officer of Agora, Anand maintained a position of special trust in the company, and was under a fiduciary duty to assign to Agora any and all intellectual property that was conceived of and developed while at Agora and that related to Agora's business.

75.   Defendants' unlawful use of Agora's intellectual property and proprietary information has allowed Prevoty to divert a substantial amount of investor funding away from Agora by capitalizing on the substantial effort and goodwill Hullinger and de Bont contributed to Agora.  For example, following Anand's dissolution of Agora and patent assignments to Prevoty, Prevoty received approximately $700,000 on March 20, 2013, approximately $2,400,000 on December 17, 2014, and approximately $8,000,000 on March 8, 2015 from investment firms.

## FIRST CAUSE OF ACTION

### (Judicial Reinstatement of Agora)

76.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

77.   Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

78.   Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

79.   Anand's May 1, 2012 email to Hullinger and de Bont explicitly confirmed that Anand, Hullinger and de Bont would each hold a one-third ownership interest as co-founders and members of Agora.

12

COMPLAINT

**CONFIDENTIAL**

80.   On October 24, 2014, Anand filed with the California Secretary of State a fraudulent Certificate of Cancellation purporting to dissolve Agora as a California LLC.

81.   Anand included materially false factual representations in the October 24, 2014 Certificate of Cancellation, including false representations that the dissolution was authorized by a vote of all of the members and that he was the "sole member" of Agora.

82.   Anand did not have authorization to unilaterally dissolve Agora as a California LLC, and his submission of the Certificate of Cancellation to the California Secretary of State on behalf of Agora was fraudulent.

83.   In approving the Certificate of Cancellation for Agora, the California Secretary of State relied upon the fraudulent information submitted in Anand's Certificate of Cancellation.

84.   Pursuant to California Government Code § 12261(a)(1) and/or 12261(a)(2), Plaintiffs request a judicial order for the reinstatement of Agora as a California limited liability company.

## SECOND CAUSE OF ACTION

### (Wrongful Dissolution of Agora, Against Defendant Anand)

85.   Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

86.   Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

87.   Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

88.   Anand's May 1, 2012 email to Hullinger and de Bont explicitly confirmed that Anand, Hullinger and de Bont would each hold a one-third ownership interest as co-founders and members of Agora.

89.   Anand wrongfully dissolved Agora when he filed the Certificate of

13

COMPLAINT

USVP_00387

**CONFIDENTIAL**

1   Cancellation with the Secretary of State on October 24, 2014, falsely listing himself
2   as Agora's sole member.

3       90.   Pursuant to Cal. Corp. Code § 17704.07, Anand has wrongfully caused
4   the dissolution of Agora and has lost the right to participate in management as a
5   member and a manager of the LLC, thereby forfeiting any and all authority
6   previously vested in him with respect to Agora.

7                **THIRD CAUSE OF ACTION**
8     **(Judicial Order to Expel Defendants Anand and Bellanger from Agora)**

9       91.   Plaintiffs restate and incorporate by reference their previous allegations
10  above, as if fully set forth herein.

11      92.   Agora was duly registered as a limited liability company with the
12  California Secretary of State on or around February 22, 2012.

13      93.   Anand, Hullinger and de Bont were each equal members of Agora with
14  an equal one-third ownership interest in Agora.

15      94.   Anand's May 1, 2012 email to Hullinger and de Bont explicitly
16  confirmed that Anand, Hullinger and de Bont would each hold a one-third
17  ownership interest as co-founders and members of Agora.

18      95.   Anand began to include Bellanger in the company's strategic decisions
19  in early 2013.

20      96.   Anand and Bellanger have engaged and continue to engage in wrongful
21  conduct that has adversely and materially affected Agora's activities.

22      97.   Anand and Bellanger have engaged and continue to engage in conduct
23  relating to Agora's activities that make it not reasonably practicable to carry on
24  activities with Hullinger and/or de Bont as members of Agora.

25      98.   Anand should be expelled from Agora by judicial order, under Cal.
26  Corp. Code § 17706.02(e).

27      99.   To the extent Bellanger is or was a member of Agora, Bellanger should
28  be expelled from Agora by judicial order, under Cal. Corp. Code § 17706.02(e).

14

**COMPLAINT**

USVP_00388

**CONFIDENTIAL**

## FOURTH CAUSE OF ACTION

### (Correction of Inventorship, 35 U.S.C. § 256)

100.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

101.  Hullinger, de Bont and Anand jointly conceived of and/or contributed to inventions claimed in the '722 Patent and '622 Application.

102.  Hullinger, de Bont and Anand are co-inventors of the claimed subject matter in the '722 Patent and '622 Application.

103.  Hullinger and de Bont were omitted as named inventors on the '722 Patent and '622 Application without any fraud on their part.

104.  Inventorship on the '722 Patent and '622 Application should be corrected under 35 U.S.C. § 256 to reflect Hullinger and de Bont as named inventors.  Hullinger and de Bont are entitled to a judgment that both are inventors of the inventions claimed in the '722 Patent and '622 Application.

## FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty, Against Defendants Anand and Bellanger)

105.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

106.  Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

107.  Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

108.  Anand's May 1, 2012 email to Hullinger and de Bont explicitly confirmed that Anand, Hullinger and de Bont would each hold a one-third ownership interest as co-founders and members of Agora.

109.  Hullinger, de Bont and Anand collaborated to develop Agora and its software technology.  Each member of the team contributed substantially to Agora's development as a company, including optimization of Agora's technology, reaching

15

USVP_00389

**CONFIDENTIAL**

1    out to prospective investors and pitching Agora's technology to a number of
2    potential customers.

3         110.  Agora was a member-managed LLC, and Anand was a managing
4    member of Agora.

5         111.  Anand held the title of CEO of Agora.  Anand held himself out as CEO
6    of Agora.

7         112.  As a member, managing member and CEO of Agora, Anand owed
8    Plaintiffs fiduciary duties of loyalty and care.

9         113.  By virtue of these fiduciary duties, Anand was required to act in the
10   utmost good faith towards Plaintiffs and to avoid acts and omissions adverse to
11   Plaintiffs' business interests.

12        114.  Anand breached his fiduciary duties to Agora, Hullinger and de Bont by
13   *inter alia* (a) starting a competing business, namely Prevoty; (b) unilaterally shutting
14   down Agora's business operations; (c) shutting out Hullinger and de Bont from their
15   Agora emails and other documents hosted on the agorasec.com network; (d) falsely
16   claiming to be the sole member of Agora; (e) falsely claiming that the members of
17   Agora had voted for dissolution; (f) unilaterally filing a Certificate of Cancellation
18   for Agora; (g) promising to file paperwork with the California Secretary of State
19   identifying Hullinger and de Bont as equal members and co-founders of Agora, and
20   representing that he had done so, when Anand had never filed such papers and had
21   no intention of doing so; (h) abandoning Agora's business efforts in the midst of on-
22   going efforts to secure contracts with potential customers and inventors; (i) failing to
23   assign intellectual property rights, including in the '722 Patent and '622 Application,
24   to Agora; (j) failing to name Hullinger and de Bont as inventors on the '722 Patent
25   and '622 Application; (k) assigning (or purporting to assign) Agora's intellectual
26   property rights to Prevoty, despite obligations to assign the intellectual property
27   rights to Agora; (l) misappropriating Agora's trade secrets and other property, such
28   as the Agora Blue Source Code and other proprietary software related to Agora

16

COMPLAINT

USVP_00390

**CONFIDENTIAL**

1  Blue, for use by a competing company; (m) soliciting investment and customers for
2  a competing company; (n) acting as CTO of a competing company; (o) failing to
3  disclose the conduct described above, which created a conflict of interest for Anand;
4  (p) conspiring with others to commit the wrongful conduct described above; (q)
5  embezzling money from Agora, including unilaterally emptying the company's bank
6  accounts and keeping the withdrawn cash for himself; (r) failing to wind up Agora
7  and distribute remaining assets to the other members after unilaterally purporting to
8  dissolve the company; and (s) other wrongful conduct.

9      115.  As a member, managing member and CEO of Agora, Anand had a
10  fiduciary duty to apprise Hullinger and de Bont of any corporate opportunity before
11  seizing it. Anand, however, kept Prevoty a secret from Hullinger and de Bont in
12  order to reap the benefits of Agora to the exclusion of Plaintiffs.

13      116.  On information and belief, Anand knowingly and willfully performed all
14  the aforementioned activities to financially benefit himself at Plaintiffs' expense.

15      117.  As a result of Anand's breach of his fiduciary duties, Plaintiffs have
16  been irreparably injured and have suffered significant monetary damages in an
17  amount to be proven at trial.

18      118.  By agreeing to be involved in Agora's strategic and investment
19  decisions—and by accepting access to Agora's confidential and proprietary
20  materials and information—Defendant Bellanger also undertook fiduciary duties to
21  Agora and its members.

22      119.  Bellanger breached his fiduciary duties to Agora, Hullinger and de Bont
23  by *inter alia* (a) starting a competing business, namely Prevoty; (b) misappropriating
24  Agora's trade secrets and other property, such as the Agora Blue Source Code and
25  other proprietary software related to Agora Blue, for use by a competing company;
26  (c) soliciting investment and customers for a competing company; (d) acting as CEO
27  of a competing company; (e) failing to disclose the conduct described above, which
28  created a conflict of interest for Bellanger; (f) conspiring with Anand and others to

17

**COMPLAINT**

USVP_00391

**CONFIDENTIAL**

1   commit the wrongful conduct described above; and (g) other wrongful conduct.

2       120.  As a result of Bellanger's breach of his fiduciary duties, Plaintiffs have

3   been irreparably injured and have suffered significant monetary damages in an

4   amount to be proven at trial.

5       121.  Defendants have also acted with fraud, oppression and/or malice.

6   Accordingly, Plaintiffs also seek an award of punitive and special damages.

7                   <u>SIXTH CAUSE OF ACTION</u>

8   **(Declaratory Judgment of Agora's Ownership of Intellectual Property, Against**

9   **Anand and Prevoty)**

10      122.  Plaintiffs restate and incorporate by reference their previous allegations

11  above, as if fully set forth herein.

12      123.  As a member, managing member and CEO of Agora, Anand had a

13  fiduciary duty to assign any and all patents, copyrights and other intellectual

14  property developed in connection with his work for Agora that relates to Agora's

15  business.

16      124.  Hullinger, de Bont and Anand jointly conceived of and/or contributed to

17  the inventions claimed in the '722 Patent and '622 Application.  Each had a duty to

18  assign his interest in the patent and application to Agora.

19      125.  In violation of his fiduciary duties to Agora, Hullinger and de Bont,

20  Anand purported to assign his entire interest in the '722 Patent and '622 Application

21  to Prevoty, a competitor of Agora.

22      126.  Anand's purported assignments of his interest in the '722 Patent and

23  '622 Application to Prevoty are void because (1) Anand was only one of three co-

24  inventors of the claimed inventions, and (2) Anand was under a fiduciary obligation

25  to assign his intellectual property rights to Agora.

26      127.  Agora is the rightful owner of all rights and interest in the '722 Patent

27  and '622 Application, as well as any U.S. or foreign applications or issued patents

28  claiming priority therefrom or relating thereto.  To the extent necessary, Anand

18

**COMPLAINT**

USVP_00392

CONFIDENTIAL

and/or Prevoty should be enjoined to assign all such rights and title to Agora.

### SEVENTH CAUSE OF ACTION

**(Declaratory Judgment of Agora's Ownership of Prevoty, Against Anand, Bellanger and Prevoty)**

128. Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

129. As a member, managing member and CEO of Agora, Anand had a fiduciary duty to refrain from competing with Agora and to refrain from seizing for himself opportunities that rightfully belong to the company. Anand further had a fiduciary duty to account to Agora and its members for any property, profit or benefit derived by Anand in the conduct of the LLC's business, or through use of the LLC's property or information, including through the appropriation of any LLC opportunities.

130. By agreeing to be involved in Agora's strategic and investment decisions—and by accepting access to Agora's confidential and proprietary materials and information—Defendant Bellanger also undertook these fiduciary duties to Agora and its members.

131. In violation of these fiduciary duties, Anand and Bellanger conspired to create a new company (Prevoty) that competes directly with Agora, shut down Agora's business operations and shut out Hullinger and de Bont from Agora's business operations, converted Agora's physical property and misappropriated Agora's trade secrets, confidential information and other intellectual property for the benefit of the new company, and appropriated customer and investment opportunities—all at the expense of Agora and its other members.

132. Agora is entitled to an accounting and recovery of all property, profit or benefit derived through use of Agora's property or information, including through the appropriation of any LLC opportunities, including without limitation (a) all stock of Prevoty, (b) all salaries, bonuses, profits and other benefits received by

19

COMPLAINT

USVP_00393

**CONFIDENTIAL**

1   Defendants Prevoty, Anand and/or Bellanger, (c) all moneys and other consideration

2   received as investments by Defendants Prevoty, Anand and/or Bellanger, and (d)

3   any other property, profit or benefit derived through the conduct of a business that

4   competes with Agora, or through use of Agora's property or information, or through

5   the appropriation of any of Agora's opportunities.

6                          <u>EIGHTH CAUSE OF ACTION</u>

7   **(Aiding and Abetting Breach of a Fiduciary Duty, Against Anand, Bellanger and**
                                    **Prevoty)**
8

9          133.  Plaintiffs restate and incorporate by reference their previous allegations

10  above, as if fully set forth herein.

11         134.  Bellanger and Anand each assisted the other in breaching his fiduciary

12  duties owed to Plaintiffs.

13         135.  Bellanger was aware of Anand's role as a member, managing member

14  and CEO of Agora.  Accordingly, Bellanger was on notice as to Anand's fiduciary

15  duties owed to Agora and its members.

16         136.  Anand was also aware of Bellanger's role with Agora, as Anand had

17  introduced Bellanger and provided him with access to Agora's confidential and

18  proprietary materials.  Accordingly, Anand was also on notice as to Bellanger's

19  fiduciary duties owed to Agora and its members.

20         137.  Bellanger took concrete steps to facilitate Anand's breach of his

21  fudiciary duties.  Among other things, Bellanger registered the domain name

22  Prevoty.com, assisted Anand in setting up a competing company, agreed to act as

23  CEO of the new company, consented to Anand's role as CTO of the new competing

24  company, and aided and facilitated Anand's misappropriation and conversion of

25  property and opportunities belonging to Agora.  Bellanger also serves as Prevoty's

26  Agent for Service of Process in California.

27         138.  On information and belief, Bellanger encouraged Anand to shut out

28  Hullinger and de Bont from Agora and to form Prevoty without them.

20

**COMPLAINT**

USVP_00394

**CONFIDENTIAL**

139. On information and belief, Bellanger and Anand secretly collaborated to develop and establish Prevoty while working at Agora, while withholding such information from Hullinger and de Bont.

140. Anand also took concrete steps to facilitate Bellanger's breach of his fiduciary duties. Among other things, Anand facilitated Bellanger's access to confidential and proprietary materials at Agora, assisted Bellanger in incorporating a competing business, agreed to act as CTO of the new company, consented to Bellanger's role as CEO of the new competing company, and aided and facilitated the misappropriation and conversion of property and opportunities belonging to Agora.

141. On information and belief, Anand and Bellanger willingly performed the above actions having knowledge of the other's fiduciary duties to Plaintiffs.

142. As a result of Anand and Bellanger's aiding and abetting of the other's breach of fiduciary duties owed to Plaintiffs, Plaintiffs have suffered and continue to suffer significant damage in an amount to be proven at trial.

143. Defendants have also acted with fraud, oppression and/or malice. Accordingly, Plaintiffs also seek an award of punitive and special damages.

## NINTH CAUSE OF ACTION

### (Fraud, Against Anand)

144. Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

145. Agora was duly registered as a limited liability company with the California Secretary of State on or around February 22, 2012.

146. Anand, Hullinger and de Bont were each equal members of Agora with an equal one-third ownership interest in Agora.

147. On March 30, 2012, Anand filed Agora's Statement of Information with the California Secretary of State, identifying himself as the sole managing member of Agora.

21

**COMPLAINT**

**CONFIDENTIAL**

1   148.  On May 1, 2012, Anand sent Hullinger and de Bont an email

2   representing that the "LLC has been amended" to include both of them as co-

3   founders.  In the May 1, 2012 email, Anand represented that the "revised Statement

4   of Information document has been sent to the State of California."

5   149.  On October 24, 2014, Anand unilaterally filed a Certificate of

6   Cancellation for Agora with the California Secretary of State.  In the filing with the

7   California Secretary of State, Anand purported to be the sole member of Agora.  In

8   the same document, Anand further represented that dissolution of Agora "was made

9   by the vote of all of the members."

10   150.  Based upon Anand's statements in the Certificate of Cancellation, it

11   appears likely that Anand's statements in his May 1, 2012 email were false, and that

12   Anand never sent any revised Statement of Information to the California Secretary

13   of State.  Plaintiffs, however, did not discover the falsity of these statements until

14   recently.

15   151.  Moreover, by virtue of his fiduciary relationship with Plaintiffs, Anand

16   had a duty to inform Plaintiffs if he was creating any competing business.

17   152.  Anand failed to disclose material information to Hullinger and de Bont

18   regarding his plans to form Prevoty, a competing company.

19   153.  On information and belief, all such representations regarding Agora's

20   LLC documents were false at the time they were made and were known to be false

21   by Anand at such times.

22   154.  On information and belief, all such omissions regarding Agora's LLC

23   documents were material at the time they were omitted and were known to be

24   material by Anand at such times.

25   155.  On information and belief, Anand's fraudulent representations and

26   omissions were made with the intent to defraud Hullinger and de Bont and to induce

27   Hullinger and de Bont to continue developing Agora and its software technology so

28   that he may benefit from Hullinger and de Bont's efforts and contributions.

22

**COMPLAINT**

**CONFIDENTIAL**

156. Hullinger and de Bont justifiably relied on the material information, or lack thereof, provided by Anand. Hullinger and de Bont had no reason to believe that Anand failed to add them as legal members of Agora or that Anand was secretly developing and establishing a competing company while actively promoting Agora's business and technology.

157. Hullinger and de Bont have suffered significant and irreparable damages as a result of Anand's fraudulent misrepresentations and omissions and request compensatory and punitive damages in an amount to be proven at trial.

158. Anand's statements in the Certificate of Cancellation are false. Even if Anand never revised the Statement of Information, Hullinger and de Bont were legally members and owners of Agora. Anand was not the "sole member" of the LLC, nor had the members taken a vote to dissolve the LLC.

159. To the detriment of Plaintiffs, the Secretary of State reasonably relied on Anand's false statements in dissolving Agora.

160. Plaintiffs seek damages in an amount to be proven at trial.

161. Defendants have also acted with fraud, oppression and/or malice. Accordingly, Plaintiffs also seek an award of punitive and special damages.

162. Plaintiffs have also suffered significant and irreparable damages as a result of Anand's fraudulent representations to the Secretary of State.

## TENTH CAUSE OF ACTION

**(Misappropriation of Trade Secrets, Against Anand, Bellanger and Prevoty)**

163. Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

164. Plaintiffs' confidential information, including the Agora Blue Source Code, relating to Agora's unique underlying software technology derives independent economic value from not being widely known to the public, and Plaintiffs used reasonable means to maintain its secrecy.

165. On information and belief, Anand, Bellanger and Prevoty knew or had

23

**COMPLAINT**

USVP_00397

**CONFIDENTIAL**

1   reason to know that Agora's proprietary information, including the Agora Blue

2   Source Code, was protected as a trade secret.

3       166.  Anand and Bellanger, as fiduciaries to Agora, were under a duty to

4   maintain the secrecy of Agora's trade secrets and confidential information.

5       167.  On information and belief, Defendants improperly appropriated

6   Plaintiffs' confidential and proprietary information and trade secrets, through

7   misrepresentations and other improper means, and used such information without

8   Plaintiffs' express or implied consent, despite having knowledge or reason to know

9   that said acquisition and use was in breach of Anand's and Bellanger's duty to

10  maintain the information's secrecy and value.

11      168.  Defendants' misappropriation of Agora's trade secrets violates § 3426.1

12  of the California Civil Code, *i.e.* the Uniform Trade Secrets Act (UTSA).

13      169.  As a result of Defendants' unlawful misappropriation and use of Agora's

14  confidential and proprietary information and trade secrets, Plaintiffs have suffered

15  significant harm, entitling them to an injunction under § 3426.2(a) of the UTSA to

16  prevent Defendants' use of such information and materials, damages and attorneys

17  fees under §§ 3426.3(a) and 3426.4 of the UTSA, and exemplary damages under §

18  3426.3(c), for Defendants' willful and malicious misappropriation of Plaintiffs trade

19  secrets.

20                **ELEVENTH CAUSE OF ACTION**

21              **Violation of Lanham Act, Section 43(a)**

22  **(Unfair Competition under 15 U.S.C. § 1125(a), Against Anand, Bellanger and
    Prevoty)**

23

24      170.  Plaintiffs restate and incorporate by reference their previous allegations

25  above, as if fully set forth herein.

26      171.  In light of the proprietary technology that was conceived of and

27  developed by Agora's members to further Agora's business, Defendants' scheming

28  tactics to wrongfully shut down Agora, usurp intellectual property owned by Agora

                        24

**COMPLAINT**

USVP_00398

**CONFIDENTIAL**

1  and market such intellectual property as their own, to the exclusion of Agora and its

2  other members, constitutes unlawful, unfair, and/or deceptive business practices in

3  violation of 15 U.S.C. § 1125(a).

4      172.  Defendants' unauthorized and infringing use and promotion of the

5  Agora Blue technology under the Prevoty name, after wrongfully forcing Agora to

6  terminate, misrepresents the nature, qualities and/or geographic origin of Agora's

7  and Prevoty's goods and services.

8      173.  Defendants knew or should have known that its unauthorized and

9  infringing use and promotion of the Agora Blue technology under the Prevoty name

10  misrepresents the nature, qualities and geographic origin of Agora's and Prevoty's

11  goods and services.

12      174.  Defendants' unauthorized and infringing use and promotion of the

13  Agora Blue technology under the Prevoty name, after wrongfully forcing Agora to

14  terminate and stop competing, severely hinders fair competition.

15      175.  As an actual and proximate result of Defendants' willful and unfair,

16  unlawful, and/or deceptive business practices, Plaintiffs have suffered and continue

17  to suffer irreparable harm and damage to their business, reputation and goodwill.

18      176.  Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to damages for

19  Defendants' Lanham Act violations, an accounting for profits made by Defendants

20  on sales of any Prevoty products or services using the Agora Blue Source Code

21  and/or underlying technology, as well as recovery of the costs of this action.

22  Furthermore, Plaintiffs are informed and believe, and on that basis allege, that

23  Defendants' conduct was undertaken willfully and with the intention to misrepresent

24  the products and/or services at issue, making this an exceptional case entitling

25  Plaintiffs to recover additional damages and reasonable attorneys' fees pursuant to

26  15 U.S.C. § 1117.

27

28

25

COMPLAINT

USVP_00399

**CONFIDENTIAL**

## TWELFTH CAUSE OF ACTION

**(Violation of California Unfair Competition Law, CA Bus. & Prof. Code § 17200)**

**(Against Anand, Bellanger and Prevoty)**

177.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

178.  At the time that Prevoty was created, Agora and Prevoty were direct competitors in the application security monitoring industry.

179.  Defendants have engaged in unfair and/or unlawful business practices within the meaning of California's Business and Professions Code § 17200 because, in California and throughout the country, and through various channels of interstate commerce, Defendants have engaged in misappropriation of intellectual property and unfair competitive practices, which violate 15 U.S.C. § 1125(a), among other violations.

180.  Defendants' unauthorized and infringing use and promotion of the Agora Blue technology under the Prevoty name, after wrongfully forcing Agora to terminate, has damaged and continues to damage fair competition within the application security monitoring industry, including in California.

181.  Defendants' conduct has been anticompetitive, as well as immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

182.  Defendants' conduct is not beneficial, but in any event, the harm caused by Defendants' conduct outweighs any benefits.

183.  Pursuant to California's Business and Professions Code §§ 17203 & 17206, Plaintiffs are entitled to injunctive relief, restitution and disgorgement of Defendants' profits obtained through its unfair competitive practices, to the maximum extent permitted by law.

184.  Unless enjoined, Defendants will continue to unfairly compete with Plaintiffs in California, causing harm to the relevant consumers.

26

**COMPLAINT**

USVP_00400

**CONFIDENTIAL**

<u>**THIRTEENTH CAUSE OF ACTION**</u>

**(Conversion, Against Anand, Bellanger and Prevoty)**

185.  Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

186.  Plaintiffs owned, possessed and/or were entitled to immediate possession of personal property, intellectual property, and other assets, which were converted by Defendants.  The converted property includes, among other things, confidential methods, source code, programming, software, documents, emails and other papers, patents and cash held in various bank accounts.

187.  Defendants substantially interfered with Plaintiffs' possession and control of their property.

188.  Among other things, Defendants substantially interfered with Plaintiffs' possession and control of their property by taking and using Agora's property and other papers when developing and promoting Prevoty's business and technology.

189.  Moreover, the methods, source code, programming and software pertaining to Agora's technology all constitute intellectual and physical property created for and rightfully belonging to Plaintiffs.  As such, Plaintiffs are entitled to exercise control and ownership over such property.

190.  Further, as alleged above, Anand filed with the PTO two patent applications in his own name – the '622 and '807 Applications – describing methods to secure user-generated content through tokenization and parsing.  He subsequently assigned these patent applications to Prevoty on December 16, 2014—assignments that Prevoty accepted. The technology in Anand's patent applications constituted the same underlying technology offered by Agora in the Agora Blue product, and is rightfully owned by Agora.

191.  Defendants Anand, Bellanger and Prevoty have intentionally and substantially interfered with Agora's property rights by patenting, taking possession of and transferring such intellectual property to Prevoty without Plaintiffs' consent.

27

**COMPLAINT**

USVP_00401

CONFIDENTIAL

1    192.  As a result of Defendants' unlawful conversion, Plaintiffs have suffered

2  significant damages and lost profits in an amount to be proven at trial.

3    193.  Plaintiffs are also entitled to preliminary and permanent injunctive relief

4  ordering the return of their property.

5    194.  Defendants have also acted with fraud, oppression and/or malice.

6  Accordingly, Plaintiffs also seek an award of punitive and special damages.

7           FOURTEENTH CAUSE OF ACTION

8             (Trespass to Chattels, Against Anand)

9    195.  Plaintiffs restate and incorporate by reference their previous allegations,

10  as if fully set forth herein.

11    196.  As members and officers of Agora, Hullinger and de Bont were in

12  rightful possession of their Agora email accounts and documents on Agora's shared

13  hard drive.

14    197.  Anand intentionally and substantially interfered with Hullinger and de

15  Bont's access to their Agora email accounts and to Agora's shared drive when he

16  unilaterally shut down Agora's network.

17    198.  Hullinger and de Bont's email accounts contained valuable information

18  related to their contributions to Agora's proprietary technology and business

19  development strategies.

20    199.  Anand's interference has permanently deprived Hullinger and de Bont of

21  access to their Agora email accounts and shared drive, preventing them from

22  obtaining documents and materials, which they have a right to possess.

23    200.  In so doing, Anand intentionally and substantially interfered with

24  Hullinger and de Bont's property rights without their consent.

25    201.  As a proximate result of Anand's unlawful conduct, Hullinger and de

26  Bont have suffered significant damages in an amount to be proven at trial.

27    202.  Defendants have also acted with fraud, oppression and/or malice.

28  Accordingly, Plaintiffs also seek an award of punitive and special damages.

28

COMPLAINT

USVP_00402

**CONFIDENTIAL**

<u>**FIFTEENTH CAUSE OF ACTION**</u>

**(Civil Conspiracy, Against Anand, Bellanger and Prevoty)**

203. Plaintiffs restate and incorporate by reference their previous allegations, as if fully set forth herein.

204. Defendants have conspired to implement the wrongful conduct alleged above.

205. On information and belief, Anand and Bellanger surreptitiously agreed—either orally, in writing and/or implicitly through their actions—to undertake the wrongful conduct described above, including shutting down Agora's operations, shutting out Hullinger and de Bont from their emails and the Agora network, forming a new competing company (Prevoty), dissolving Agora, misappropriating and converting Agora's property, assigning Agora's intellectual property rights to Prevoty, and failing to disclose such conduct to Plaintiffs. In doing so, Anand and Bellanger acted both in their personal capacity and in their respective roles with Prevoty.

206. Each of the Defendants was aware of the wrongful conduct and intended that it should occur.

207. Accordingly, each of the Defendants is responsible and liable for the harm caused by the other co-conspirators alleged above.

208. Defendants have also acted with fraud, oppression and/or malice. Accordingly, Plaintiffs also seek an award of punitive and special damages.

<u>**ADDITIONAL CAUSES OF ACTION RESERVED**</u>

209. Plaintiffs restate and incorporate by reference their previous allegations, as if fully set forth herein.

210. Once Agora is reinstituted as an LLC and the '722 Patent is properly assigned to Agora, Plaintiffs are likely to amend their Complaint to add a claim for patent infringement.

211. Plaintiffs are investigating whether Defendants have also infringed

29

**COMPLAINT**

**CONFIDENTIAL**

1   Plaintiffs' copyright in various source code and other writings belonging to
2   Plaintiffs. Plaintiffs are likely to amend their Complaint to add claims for copyright
3   infringement after discovery on such issues.

4       212. Plaintiffs also intend to seek discovery to ascertain the names of other
5   individuals and/or entities that conspired with Defendants and/or aided Defendants
6   in committing the wrongs alleged above. Plaintiffs intend to amend their Complaint
7   to add claims against these individuals and/or entities.

8       213. Plaintiffs also reserve the right to otherwise amend their Complaint
9   and/or add parties, to the extent permitted by the Court's scheduling order and by the
10  Federal Rules of Civil Procedure.

11                          **DEMAND FOR JURY TRIAL**

12      214. Plaintiffs hereby demand a jury trial on all claims, damages and any
13  other issues presented herein that are triable to a jury.

14                          **RELIEF REQUESTED**

15      WHEREFORE, Plaintiffs pray that the Court enter judgment against
16  Defendants Anand, Bellanger and Prevoty and in favor of Plaintiffs as follows:

17      A.    Declare that Anand wrongfully caused the dissolution of Agora under
18            Cal. Corp. Code § 17704.07;

19      B.    Order the California Secretary of State to reinstate Agora as an active
20            limited liability company, under California Government Code
21            § 12261(a)(1) and/or 12261(a)(2). To the extent that Agora is not
22            reinstated, Plaintiffs Hullinger and de Bont raise their claims asserted
23            herein as former owners of Agora, and seek their pro rata share of
24            damages;

25      C.    Declare that Anand has lost the right to participate in management as a
26            member and a manager of the LLC, thereby forfeiting any and all
27            authority previously vested in him with respect to Agora;
28

**COMPLAINT**

USVP_00404

**CONFIDENTIAL**

D.   Order that Anand and Bellanger be expelled from Agora, under Cal. Corp. Code § 17706.02(e);

E.   Order correction of inventorship on the '722 Patent and '622 Application by adding Hullinger and de Bont as named inventors;

F.   Judgment that Anand and Bellanger breached their fiduciary duties to Plaintiffs, and that all of the Defendants aided Anand and Bellanger's breach of fiduciary duties;

G.   Declaration that the '722 Patent and '622 Application are owned by Agora, and an injunction ordering Anand and Prevoty to assign such rights to Agora;

H.   Declaration that all stock, profits, investments and other property of Prevoty—including any salary, bonuses or other moneys or benefits received by Anand or Bellanger—rightfully belong to Agora, with an accounting of all such stock, profits, investments and other property;

I.   Order enjoining Anand from preventing Plaintiffs' access to Agora's email accounts and shared drive;

J.   Judgment that Defendants have committed fraud, misappropriated Agora's confidential/proprietary information trade secrets, unfairly competed under California and federal law, and wrongfully converted Agora's property;

K.   Compensatory damages caused by Defendants' wrongful conduct outlined herein, to be proven at trial;

L.   Punitive damages for Defendants' intentional, malicious, fraudulent and/or oppressive conduct, and willful and malicious misappropriation of Plaintiffs' trade secrets;

M.   A preliminary and permanent injunction preventing Defendants' use of Plaintiffs' confidential trade secrets;

31

COMPLAINT

USVP_00405

**CONFIDENTIAL**

1       N.    Disgorging of profits and unjust enrichment that have otherwise accrued

2               to Defendants as a result of their wrongful conduct outlined above;

3       O.    An award of costs and attorneys' fees to the fullest extent permitted by

4               law;

5       P.    Pre-judgment and post-judgment interest to the fullest extent provided

6               by law;

7       Q.    Declaration that Defendants have engaged in a civil conspiracy, such

8               that each Defendant is jointly and severally liability for all moneys

9               awarded; and

10      R.    Such other and further relief as the Court deems just and proper.

11  DATED: September ___, 2015   By: _____

12                                Guy Ruttenberg

13                                RUTTENBERG IP LAW, A
                              PROFESSIONAL CORPORATION

14                                1801 Century Park East, Suite 1920

15                                Los Angeles, CA 90067
                              Telephone: (310) 627-2270

16                                Facsimile: (310) 627-2260
                              guy@ruttenbergiplaw.com

17                                *Attorney for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

USVP_00406

**CONFIDENTIAL**

# EXHIBIT

# A

**USVP_00407**

**CONFIDENTIAL**

From:  Kunal Anand  kunal.anand@agorasec.com
Subject:  LLC + Other Info
Date:  May 1, 2012 at 3:21 PM
To:  Ben de Bont  ben.debont@agorasec.com,  Jason Hullinger  jason.hullinger@agorasec.com

LLC has been amended and now includes you both. Since there's an uneven percentage with there being 3 co-founders, it is setup as:

Ben: 33.33%
Jason: 33.33%
Kunal: 33.34%

We can change these percentages without going through the state - we can rock/paper/scissors for the .01%. As of now, it looks like I'm buying you bros some pizza. The revised Statement of Information document has been sent to the State of California. I will receive an updated agreement + incorporation documents within 7 business days. Ben - when you're back down, we can cut stock certificates and all sign the updated operating agreement.

Next, I've completed the EIN and will throw that document in Google Docs. We're officially an "employer" which means we can open up a bank account.

Two more forms need to be completed:

1. Seller's Permit
2. State Tax ID

Both require information from you both, such as address, SSN/TIN, etc. We can go over all that info on our call later tonight at 7pm. I'd like to submit both forms no later than tomorrow morning.

Let's also figure out which bank we want to go with - I'd like to get that account setup sometime this week. I'm leaning towards Wells Fargo or Chase but am open to anything other than BofA (they are really bad for business accounts). Jason and I can be co-signers on the account for now. Ben - we can add you when you come back to LA to sign some forms.

I'm also going to get an appointment setup with an accountant for mid/late-May.

Talk to you guys later tonight.

Kunal

USVP_00408

CONFIDENTIAL

# EXHIBIT

# B

USVP_00409

**CONFIDENTIAL**

Print Image

Page 1 of 1

| Routing | Sequence # | Paid Date | Amount | Account | Serial | Capture Source |
|---|---|---|---|---|---|---|
| 121042882 | 2432210736 | 05/02/2015 | 2377.25 | 7705835168 | 2922 | 00010054 |

**Withdrawal**

2922

Two Thousand three hundred seventy and 25/100

$ 2377.25

⑆2922⑆ ⑈500000694⑈

https://oibservices.qclkfargo.com/OIB/PrintImage.jsp

9/2/2015

**USVP_00410**